1   Daniel H. Qualls, Bar No. 109036
    Robin G. Workman, Bar No. 145810
2   **QUALLS & WORKMAN, LLP**
    244 California Street, Suite 410
3   San Francisco, CA 94111
    Telephone: (415) 782-3660
4   Facsimile: (415) 788-1028

5   David Sanford, D.C. Bar No. 457933
    Meenoo Chahbazi, CA Bar No. 233985
6   **SANFORD, WITTELS & HEISLER, LLP**
    1666 Connecticut Avenue, N.W., Suite 310
7   Washington, D.C. 20009
    Telephone: (202) 742-7780
8   Facsimile: (202) 742-7776

9   Grant Morris, D.C. Bar No. 926253
    **LAW OFFICES OF GRANT E. MORRIS**
10  1666 Connecticut Avenue, N.W., Suite 310
    Washington, D.C. 20009
11  Telephone: (202) 742-7783
    Facsimile: (202) 742-7776

12
    *Attorneys for Plaintiff*
13

14              UNITED STATES DISTRICT COURT

15            NORTHERN DISTRICT OF CALIFORNIA

16  VALERIE D. WATSON-SMITH, AND ALL          ) No.  C07-05774
    OTHERS SIMILARLY SITUATED,                )
17                                            ) **DECLARATION OF DANIEL H.**
                                              ) **QUALLS IN SUPPORT OF**
18             Plaintiff,                     ) **PLAINTIFF'S MEMORANDUM OF**
                                              ) **POINTS AND AUTHORITIES IN**
19        vs.                                 ) **SUPPORT OF MOTION FOR LEAVE**
                                              ) **TO FILE FIRST AMENDED**
20  SPHERION PACIFIC WORKFORCE, LLC, and      ) **COMPLAINT**
    DOES 1 through 100, inclusive,            )
21                                            )
               Defendants.                    ) **Date:  October 3, 2008**
22                                            ) **Time: 9:00 a.m.**
                                              ) **Courtroom: 2**
23                                            ) **Judge:  Honorable Jeffrey S. White**
    _____
24  I, Daniel H. Qualls, declare as follows:

25       1.      I am an attorney at law, duly licensed to practice before all the courts of the State of

26  California, and am a Partner with the law firm of Qualls & Workman, L.L.P., attorneys of record

27

28
    DECLARATION OF DANIEL H. QUALLS        -1-              3154\MOTFORLEAVE\DHQDECL.DOC

1   herein for Plaintiff Valerie D. Watson-Smith.  The following is based on my personal knowledge,

2   and if called upon to do so, I could and would competently testify thereto.

3

4          2.      On November 2, 2007, Watson-Smith sent by certified mail a Notice Of Violations

5   to the California Labor and Workforce Development Agency (LWDA) as required by section

6   2699.3(a)(1) of the PAGA.  A true and correct copy of Plaintiff's November 2, 2007, letter is

7   attached hereto as Exhibit A.

8          3.      On December 10, 2007, the LWDA informed Plaintiff that it did not intend to

9   investigate claims as set forth in the Notice Of Violations.  Attached hereto as Exhibit B is a true

10  and correct copy of the LWDA's December 10, 2007 letter.

11         4.      On April 2, 2008, Magistrate Brazil ordered Defendant Spherion to produce a

12  witness pursuant to Federal Rule of Civil Procedure (FRCP) 30(b)(6) regarding Spherion's meal

    period policies and practices applied to California hourly employees during the proposed class

13  period and Spherion's meal period and compensation record keeping policies and practices. On

14  May 30, 2008, Spherion produced Spherion Human Resources Manager Joan Orzo (Orzo) as the

15  designated FRCP 30(6)(b) witness on the subjects of Spherion meal period policies and practices

16  and Spherion meal period and compensation record keeping policies and practices.  A true and

17  correct copy of excerpts of Ms. Orzo's testimony are attached hereto as Exhibit C.  Attached

18  hereto as Exhibit D is a true and correct copy of an exemplar of a Spherion electronic time record.

19         5.      Attached hereto as Exhibit E is Plaintiff's proposed First Amended Complaint

20  (FAC). The proposed PAGA claim as set forth in the FAC does not give rise to new or difference

21  factual or legal issues because it is entirely derivative of existing wage and hour claims set forth in

22  Plaintiff's current Complaint.

23         6.      Counsel for Defendant Spherion has informed me that Defendant does not oppose

24  Plaintiff's request for leave to add a PAGA claim, and so advised the Court at the Case

25  Management Conference held on June 20, 2008.

26         7.      The proposed amendment to the definition of Class A, is not sought in bad faith,

27  and does not constitute an exercise in futility.  The amendment sought to Class A seeks to more

28
    DECLARATION OF DANIEL H. QUALLS          -2-              3154\MOTFORLEAVE\DHQDECL.DOC

1 | narrowly define Class A class in light of workplace circumstances of putative class members, as
2 | well as eliminate potentially disparate working conditions which may be claimed by Defendant
3 | within a single class by formation of two related but distinct subclasses.   The amendment in my
4 | opinion will not cause undue prejudice to Spherion, as the amendment sought narrows the scope
5 | of the existing proposed class, and is based upon the same facts and legal claims as Class A as
6 | currently defined.

7 |    I declare under penalty of perjury that the foregoing is true and correct and that this
8 | Declaration was executed July 28, 2008, in San Francisco, California.

/s/
DANIEL H. QUALLS

# EXHIBIT A



**Qualls&**
**Workman** LLP
ATTORNEYS AT LAW

November 2, 2007

Our File No.: 3154.00

<u>Via Certified Mail</u>

Labor and Workforce Development Agency          Spherion Pacific Workforce, LLC
801 K Street, Suite 2101                        2050 Spectrum Boulevard
Sacramento, CA 95814                            Fort Lauderdale, Florida 33309

Re:     Notice Of Violations Of California Labor Code Sections 226, 226.7, 512, 588, 1194, and
        Pursuant To California Labor Code Section 2699 et.seq.

To Whom It May Concern:

        Our offices have been retained by Valerie Watson-Smith. Ms. Watson-Smith is an
employee of Spherion Pacific Workforce, LLC (Spherion). Ms. Watson-Smith contends that
Spherion failed to pay her overtime for hours worked, and failed to provide her, and similarly
situated Spherion employees, with rest and meal periods as prescribed by California Labor Code
section 226.7, and compensation as a consequence pursuant to California Labor Code section
512. As a consequence of the aforementioned conduct and violations, Watson-Smith further
contends that Spherion also failed to provide accurate wage statements to her, and Spherion
employees similarly situated, in violation of California Labor Code section 226 and 1174. Said
conduct, in addition to the forgoing, violates Labor Code §§ 201-204, 221, 224, 226, 226.7, 558,
1174, 1194, and each Labor Code section as set forth in California Labor Code section 2699.5.

        This notice is provided to enable Ms. Watson-Smith to proceed with her complaint filed
in the Alameda County Superior Court against Spherion as authorized by California Labor Code
section 2695, et. seq.

                                        Very truly yours,

                                        QUALLS & WORKMAN, L.L.P.


                                        Robin G. Workman

RGW/tmm

# EXHIBIT B



# Labor & Workforce Development Agency

Date December 10, 2007

Qualls & Workman
244 California Street, Suite 410
San Francisco, CA 94111

Spherion Pacific Workforce, LLC
2050 Spectrum Boulevard
Fort Lauderdale, Florida 33309

Re:    LWDA No: 2856
       Employer:   Spherion Pacific Workforce, LLC
       Employee:   Valerie Watson-Smith

Dear Employer and Representative of the Employee:

This is to inform you that the Labor and Workforce Development Agency (LWDA)
received your notice of alleged Labor Code violations pursuant to Labor Code Section
2699, postmarked November 02, 2007 and after review, does not intend to investigate the
allegations.

As a reminder to you, the provisions of Labor Code Section 2699(i) provides that "…civil
penalties recovered by aggrieved employees shall be distributed as follows:  75 percent to
the LWDA for enforcement of labor laws and education of employers and employees about
their rights and responsibilities under this code".  Labor Code Section 2699(l) specifies
"[T]he superior court shall review and approve any penalties sought as part of a proposed
settlement agreement pursuant to this part".

Consequently you must advise us of the results of the litigation, and forward a copy of the
court judgment or the court-approved settlement agreement.

Sincerely,

*Robert A. Jones*

Robert A. Jones
Deputy Secretary

**Agricultural Labor Relations Board**

**California Unemployment Insurance Appeals Board**

**California Workforce Investment Board**

**Department of Industrial Relations**

**Economic Strategy Panel**

**Employment Development Department**

**Employment Training Panel**

**EXHIBIT C**

```
 1                 UNITED STATES DISTRICT COURT

 2               NORTHERN DISTRICT OF CALIFORNIA

 3

 4

 5  VALERIE D. WATSON-SMITH, AND ALL )
    OTHERS SIMILARLY SITUATED,       )
 6                                   )
                    Plaintiff,       )
 7                                   )
                 v.                  )   No. C07-05774
 8                                   )
    SPHERION PACIFIC WORKFORCE, LLC, )
 9  and DOES 1 through 100,          )
    inclusive,                       )
10                                   )
                    Defendants.      )
11  _____ )

12

13

14

15           Deposition of JOAN L. ORZO, taken

16           on behalf of the Plaintiff, at

17           244 California Street, Suite 410,

18           San Francisco, California, commencing

19           at 9:03 a.m., Friday, May 30, 2008,

20           before Karen Moon, Certified Shorthand

21           Reporter No. 12450.

22

23

24

25
```

1  responsive to the notice of depositions. The documents
2  that have been produced pertain to general Spherion
3  policies related to the topics identified.
4      We have objected to the breadth of the
5  discovery request to the extent they request Spherion to
6  go to each individual employer or entity to pull the
7  specific policies that may apply to individual work
8  employees at a very low level, if that makes any sense.
9      MR. QUALLS: Are any documents being withheld
10  under claim of objection or privilege in response to the
11  deposition notices marked to the record?
12      MR. SANDERSON: Again, we've produced
13  documents that are generally applicable to hourly
14  employees in California regarding meal breaks and
15  expense reimbursement. We haven't withheld any
16  documents on -- on privilege grounds.
17  BY MR. QUALLS
18      Q    I'm going to be asking you a series of
19  questions in this examination regarding Spherion
20  employees. I mean by Spherion employees, Spherion
21  employees paid on an hourly basis, employed in
22  California since September 1st, 2003 to the present.
23      Understood?
24      A    Understood.
25      MR. SANDERSON: And I may remind you of that

1  every once in a while, just so we're clear.
2      THE WITNESS: Okay.
3  BY MR. QUALLS
4      Q    Does Spherion keep records of meal period
5  breaks taken by Spherion employees?
6      A    They should.
7      Q    What kind of records are kept?
8      A    Typically time sheets. Time sheets come in
9  two versions or could come in two versions. Manual or
10  electronic.
11      Q    What employees -- withdraw the question.
12      Are manual time sheets -- withdraw the
13  question.
14      How long have manual team sheets for Spherion
15  employees been used?
16      A    For as long as I've been with the
17  organization.
18      Q    Since September -- since at least
19  September 1st, 2003 to the present?
20      A    Yes.
21      Q    Have they been in use that entire period of
22  time by some Spherion employees?
23      A    Yes.
24      Q    What is the form used for the time sheets?
25      A    I'm not sure I understand.

1      Q    Is there a form used for time sheets to record
2  meal periods by Spherion employees?
3      A    Yes.
4      Q    What form is used?
5      A    Again, paper for some. Some use time clocks.
6  Some use electronic means.
7      Q    All right. Let's focus on the paper forms --
8      A    Okay.
9      Q    -- for now.
10      Has the format of the paper form used to
11  record meal periods changed from September 1st, 2003
12  until the present?
13      A    It may have. I don't see time sheets
14  typically in my role.
15      Q    Do you know if the form has changed or has
16  remained the same?
17      A    I would have to guess.
18      Q    You don't know?
19      A    I don't know.
20      Q    Once a Spherion employee uses a manual time
21  sheet to record time worked, what's the next person --
22  who's the next person that receives that time sheet?
23      A    Our temporaries are instructed to send them to
24  the branch office for processing.
25      Q    What is the next step in the process at the --

1  withdraw the question.
2      What is the next step for a manual time sheet
3  once sent to a branch office?
4      A    My understanding of the process is that the
5  branch will verify hours with the client to confirm
6  accuracy.
7      Q    What's the next step in the process?
8      A    Upon client confirmation of the hours
9  recorded, the branch personnel will process it into our
10  payroll system.
11      Q    And how does that process work? Withdraw the
12  question.
13      What are the steps in that process?
14      A    I don't have that level of access or
15  understanding.
16      Q    By some process, branch personnel process time
17  record information to payroll; is that correct?
18      A    Correct.
19      Q    Is that done electronically?
20      A    Yes.
21      Q    Is the information recorded electronically?
22      A    I don't know.
23      Q    Who in payroll is responsible for receipt of
24  time sheet information processed by branch personnel?
25      A    Payroll staff is divided up by -- by

JOAN L. ORZO

Page 27

1    A    -- in that regard?
2    Q    Yes, ma'am.
3    A    No.
4    Q    To your knowledge, when branch personnel
5    process manual meal period records for Spherion
6    employees, do they read the records to determine if the
7    records depict meal periods not taken?
8    A    I -- I don't have any knowledge of that.
9    Q    To your knowledge, does that take place?
10   A    No.
11   Q    When branch managers -- excuse me.  Withdraw
12   the question.
13        When branch personnel process manual time
14   sheets for Spherion employees, is any effort made to
15   determine if Spherion employees are entitled to an
16   additional hour of compensation for missed meal breaks?
17        MR. SANDERSON:  Objection.  Vague, ambiguous.
18   Calls for a legal conclusion.
19   BY MR. QUALLS:
20   Q    You can answer.
21   A    If it's -- as people are processing time
22   sheets, if they notice an employee is not taking a
23   lunch, we would typically go back to the client and ask
24   them why, to find out what took place there.
25   Q    And how do you know that happens?

Page 28

1    A    I don't.
2    Q    You have no knowledge of whether or not that
3    ever takes place; correct?
4    A    I don't have firsthand knowledge, no.
5    Q    Has anyone ever told you that that process
6    takes place?
7    A    Yes.
8    Q    Who?
9    A    Managers will call, and they'll say that they
10   have seen an employee that hasn't taken a lunch, and
11   what should they do about that.  I tell them they need
12   to go back and find out why.
13   Q    In a circumstance where an employee has not
14   taken a lunch, as depicted on a manual time sheet, is
15   the employee paid an extra hour of compensation?
16   A    They're paid for the time that they worked.
17   Q    Are they paid an additional hour's
18   compensation, where the meal period record depicts a
19   meal period not taken?
20   A    I don't know.
21   Q    Have you ever instructed anyone at any time
22   that employees for whom meal period records maintained
23   manually or electronically depict a meal period not
24   taken, they are to be paid an extra hour of
25   compensation?

Page 29

1    A    I've told managers that's a potential,
2    depending upon the circumstances.
3    Q    Have you ever instructed anyone to pay an
4    employee an extra hour of compensation for a meal period
5    not taken as depicted on a meal period record?
6    A    I've never been asked that question.  So no.
7    Q    To your knowledge, has Spherion ever paid an
8    employee an additional hour of compensation where the
9    employee's meal period record depicts a meal period not
10   taken?
11        MR. SANDERSON:  Objection.  Calls for
12   speculation.
13   BY MR. QUALLS:
14   Q    You can answer.
15   A    I have no knowledge of that.
16   Q    To your knowledge, do pay statements provided
17   to Spherion employees identify compensation paid for the
18   absence of meal period breaks?
19        MR. SANDERSON:  Objection.  Vague and
20   ambiguous.
21        Do you understand it?
22        THE WITNESS:  I do.  I think I do.  If I
23   understand it correctly, you're asking if the pay
24   statement that a temporary employee would receive would
25   show where they were paid when they didn't take a meal

Page 30

1    break?
2    BY MR. QUALLS:
3    Q    Yes.
4    A    Is that correct?
5    Q    Yes.
6    A    I don't have that information.  I don't know.
7    Q    Have you ever seen such a pay statement?
8    A    No.
9    Q    Has anyone ever told you that such a pay
10   statement has ever existed?
11   A    No.
12        MR. SANDERSON:  Can I get clarification.
13   Maybe I don't understand.  Maybe I'm the only one.
14   You're talking about a pay statement that would show the
15   additional hour of compensation, not the time worked?
16        MR. QUALLS:  Or hours.  Additional
17   compensation for missed meal period breaks.
18        MR. SANDERSON:  In terms of -- the penalty
19   wage; right?
20        MR. QUALLS:  Well, yes.  We can quibble over
21   what it is.  But right.  The compensation for a missed
22   meal period break.
23        MR. SANDERSON:  That's how you understood it;
24   right?
25        THE WITNESS:  That it would reflect that

8 (Pages 27 to 30)

Page 39

1   A  Some.
2   Q  What percentage of staffing services employees
3 work on customer sites?
4   A  Majority.
5   Q  More than 75 percent?
6   A  Probably.
7   Q  More than 85 percent?
8   A  I would guess.
9   Q  Would that be your best estimate?
10   A  Yes.
11   Q  Are Spherion supervising personnel physically
12 present on-site when Spherion staffing personnel work on
13 customer sites?
14   A  Sometimes.
15   Q  How frequently?
16   A  Depends on contractual terms. Volume of
17 people assigned.
18   Q  I'm sorry. Say again?
19   A  It depends on contractual terms and the number
20 of people that are assigned. There's a lot of variables
21 that play into whether or not there's on-site presence.
22   Q  Some Spherion employees work on-site without
23 the presence of Spherion supervisors; correct?
24   A  Correct.
25   Q  What percentage?

Page 40

1   A  I have no idea. I mean...
2   Q  For Spherion employees who work on customer
3 sites without the presence of Spherion supervisors --
4   A  Uh-huh.
5   Q  -- who schedules their meal breaks?
6   A  Branch personnel are the supervising entity of
7 those people that work on-site. And flexible staff will
8 typically follow the work schedules assigned by the
9 client for client personnel.
10   MR. QUALLS: Could you read back that
11 response, please.
12   (The deposition officer read back the answer
13 as follows:
14   "ANSWER: Branch personnel are the supervising
15 entity of those people that work on-site. And flexible
16 staff will typically follow the work schedules assigned
17 by the client for client personnel.")
18 BY MR. QUALLS
19   Q  What is flexible staff?
20   A  I was just going to say, internally we refer
21 to temporaries as flexible staff. So when you talk
22 about temporary personnel, that's -- we're talking the
23 same thing. We're just using different terms, I think.
24   Q  All right. So temp personnel are referred to
25 as flexible staff?

Page 41

1   A  Correct.
2   Q  How many temporary personnel employees are
3 there at Spherion currently?
4   A  I have no idea.
5   Q  More than a thousand?
6   A  Yes.
7   MR. SANDERSON: In California?
8   MR. QUALLS: I've been very careful in
9 defining what I'm talking about here today.
10   MR. SANDERSON: I'll say asked and answered,
11 then, because it's the same question about temporary
12 staffing.
13   MR. QUALLS: I don't believe so.
14 BY MR. QUALLS
15   Q  But nevertheless, so we're -- there's no
16 mistake about your testimony, ma'am, I don't mean to ask
17 questions repeatedly. I try very hard not to repeat my
18 questions.
19   MR. QUALLS: So could you read back my
20 question, please.
21   (The deposition officer read back the question
22 as follows:
23   "QUESTION: More than a thousand?")
24   MR. QUALLS: I believe there was an answer to
25 my question.

Page 42

1   (The deposition officer read back the answer
2 as follows:
3   "ANSWER: Yes.")
4 BY MR. QUALLS
5   Q  More than 2,000?
6   MR. SANDERSON: Objection. Asked and
7 answered.
8   THE WITNESS: I would say yes.
9 BY MR. QUALLS
10   Q  More than 3,000?
11   A  Probably.
12   Q  More than 4,000?
13   A  I don't have the answer to that question.
14   Q  Now with respect to temporary personnel, is it
15 your testimony that client or client personnel schedule
16 their meal periods?
17   A  They provide work schedules to Spherion, and
18 if meals are not included in that work schedule, we
19 would ask the client to include them for our personnel.
20   Q  My question is more specific than that.
21   A  Uh-huh.
22   Q  Does client or client personnel schedule meal
23 periods for temporary personnel?
24   A  No.
25   Q  Who schedules the meal periods?

JOAN L. ORZO

Page 95

1  Spherion to Cisco can work for any of our business
2  units.
3       But to my knowledge, there is on-site presence
4  that would -- is that true? There is an on-site
5  presence at the account from Spherion. And therefore,
6  depending on who placed the person at the Cisco account,
7  they may or may not be managed directly by the branch.
8  BY MR. QUALLS
9       Q   So it may or may not be the case that an
10 employee at the Cisco site was -- had time records
11 processed by branch personnel; is that correct?
12      A   And you said could -- it's possible. Right?
13      Q   It may or may not be the case; is that
14 correct?
15      A   Correct.
16      Q   In the event that a Spherion employee is
17 placed at the Cisco site and there is not a supervisor
18 on-site, that employee would have time records processed
19 by branch personnel; is that correct?
20      A   In most circumstances, yes.
21      Q   Let me turn your attention, ma'am, if I could,
22 to -- again, to Exhibit 5. Turning your attention to
23 page 12.
24      For Spherion employees who are working on-site
25 where Spherion supervisors are not present, it is the

Page 96

1  client who provides meal periods to the employee, meal
2  period -- meal periods to the employees on a day-to-day
3  basis; correct?
4       MR. SANDERSON: Objection. Vague.
5       THE WITNESS: Are you referring to the section
6  where it says punctuality for work?
7  BY MR. QUALLS
8       Q   Yes.
9       A   Punctuality at work?
10      Q   Yes, ma'am.
11      A   It would have been, as I mentioned before,
12 when we place people on the Cisco assignment, we would
13 outline for them their work schedule, which would
14 include a lunch break.
15      And so your question --
16      MR. SANDERSON: Do you want to hear it again?
17      THE WITNESS: Yeah. I think I need to.
18      (The deposition officer read back the question
19 as follows:
20      "QUESTION: For Spherion employees who are
21 working on-site where Spherion supervisors are not
22 present, it is the client who provides meal periods to
23 the employee, meal period -- meal periods to the
24 employees on a day-to-day basis; correct?")
25      THE WITNESS: I'm going to say correct, in

Page 97

1  agreement with contractual terms and what we've
2  communicated to the employee.
3  BY MR. QUALLS
4       Q   And in circumstances where the client does not
5  provide meal periods to the employee, does Spherion pay
6  an additional hour of compensation for the lack of a
7  meal period?
8       MR. SANDERSON: Objection. Asked and
9  answered.
10      THE WITNESS: I've not given that instruction.
11 BY MR. QUALLS
12      Q   Are you aware of anyone who's done so?
13      A   I am not.
14      Q   What does the client do on a day-to-day basis
15 to provide a Spherion employee with a meal period?
16      MR. SANDERSON: Objection. Vague and
17 ambiguous. And to the extent provide is the legal term,
18 calls for a legal conclusion.
19 BY MR. QUALLS
20      Q   You can answer, ma'am.
21      A   The client outlines the work schedule of our
22 employees on assignment. We communicate to them what
23 that should be. That includes the meal breaks.
24 We -- the employee takes that time as their meal period.
25      Q   But my question is, what does the client do on

Page 98

1  a day-to-day basis to provide the meal period break
2  promised?
3       MR. SANDERSON: Objection. Overbroad. Same
4  objection as the last question.
5  BY MR. QUALLS
6       Q   You can answer.
7       A   They would not -- the client would not
8  interfere with our person's taking their lunch break.
9       Q   Anything else?
10      A   I can't think of anything.
11      Q   Does the client do anything to affirmatively
12 provide the employee with a promised meal period?
13      MR. SANDERSON: Same objections.
14      THE WITNESS: Can you repeat the question for
15 me, please.
16      (The deposition officer read back the question
17 as follows:
18      "QUESTION: Does the client do anything to
19 affirmatively provide the employee with a promised meal
20 period?")
21      THE WITNESS: They would -- again, they
22 wouldn't interfere with them taking their lunch break.
23 They wouldn't require them to perform work during their
24 meal period. That's all I can think of.
25 BY MR. QUALLS

# EXHIBIT D

# spherion

## Weekly time record

**Account Name:** Cisco Systems

**Employee Name:** Valerie Watson-Smith

**Week ending:** 4/1/2007

*Time Card will calculate from Reg hours - Other, then give a total on each line

| Date | Time In | Time Out | Total |
|------|---------|----------|-------|
| 3/26/2007 | 8:30 AM | 4:30PM | 8.00 |
| 3/27/2007 | 8:30AM | 4:30PM | 8.00 |
| 3/28/2007 | 9:00AM | 5:00PM | 8.00 |
| 3/29/2007 | 9:30AM | 5:30PM | 8.00 |
| 3/30/2007 | 8:30AM | 4:30PM | 8.00 |
| 3/31/2007 | n/a | n/a | n/a |
| 4/1/2007 | n/a | n/a | n/a |

### Total Hours Worked



D0088

# EXHIBIT E

1   Daniel H. Qualls, Bar No. 109036
    Robin G. Workman, Bar No. 145810
2   **QUALLS & WORKMAN, LLP**
    244 California Street, Suite 410
3   San Francisco, CA 94111
    Telephone: (415) 782-3660
4   Facsimile: (415) 788-1028

5   David Sanford, D.C. Bar No. 457933
    Meenoo Chahbazi, CA Bar No. 233985
6   **SANFORD, WITTELS & HEISLER, LLP**
    1666 Connecticut Avenue, N.W., Suite 310
7   Washington, D.C. 20009
    Telephone: (202) 742-7780
8   Facsimile: (202) 742-7776

9   Grant Morris, D.C. Bar No. 926253
    **LAW OFFICES OF GRANT E. MORRIS**
10  1666 Connecticut Avenue, N.W., Suite 310
    Washington, D.C. 20009
11  Telephone: (202) 742-7783
    Facsimile: (202) 742-7776

12
    *Attorneys for Plaintiff*
13

14                   UNITED STATES DISTRICT COURT

15                 NORTHERN DISTRICT OF CALIFORNIA

16

17  VALERIE D. WATSON-SMITH, AND ALL          )   No.  C07 05774
    OTHERS SIMILARLY SITUATED,                )
18                                            )
              Plaintiff,                      )   **[PROPOSED] FIRST AMENDED**
19                                            )   **CLASS ACTION**
         vs.                                  )   **COMPLAINT**
20                                            )
    SPHERION PACIFIC WORKFORCE, LLC, and      )
21  DOES 1 through 100, inclusive,            )
                                              )
22            Defendants.                     )

23

24          Plaintiff Valerie D. Watson-Smith ("Watson-Smith") by her attorneys, brings this action

25  on behalf of herself, all other persons similarly situated and the general public, and hereby alleges

26  as follows:

27

28

FIRST AMENDED  COMPLAINT           -1-        3154\PLEADINGS\1stAMCOMPLAINT.DOC

**PARTIES**

1.      Plaintiff Watson-Smith is a California resident and natural person.

2.      Plaintiff is informed and believes and on that basis alleges that Spherion Pacific Workforce, LLC (Spherion and/or Defendant) is and at all times material herein mentioned was, a corporation doing business in the State of California and within the County of Alameda.

3.      The names and capacities of defendants sued herein under California Code of Civil Procedure §474 as Does 1 through 100, inclusive, are presently not known to Plaintiff, who therefore sues these defendants by such fictitious names.  Plaintiff will seek to amend this Complaint and include these Doe defendants' names and capacities when they are ascertained. Each of the fictitiously named defendants is responsible in some manner for the conduct alleged herein and for the injuries suffered by Plaintiff, the members of the Class and the general public.

4.      At all times mentioned in the causes of action alleged herein, each and every defendant was an agent and/or employee of each and every other defendant.  In doing the things alleged in the causes of action stated herein, each and every defendant was acting within the course and scope of this agency or employment and was acting with the consent, permission and authorization of each of the remaining defendants.  All actions of each defendant as alleged in the causes of action stated herein were ratified and approved by every other defendant or their officers or managing agents.

**FACTS APPLICABLE TO ALL CLAIMS**

5.      Plaintiff incorporates herein by reference each and every allegation set forth in paragraphs 1 through 4 above.

6.      This action alleges that Defendant failed to pay its California hourly employees compensation for work without meal break periods in violation of California Labor Code § 226.7 and applicable Industrial Welfare Commission Orders, failed to reimburse its California employees for work related travel expenses, and failed to pay its California employees overtime wages.

7.      This action seeks relief for unremedied violations of California law, including, inter alia; damages, and/or restitution, as appropriate, to members of the Class, and to victims of the

FIRST AMENDED  COMPLAINT                    -2-          3154\PLEADINGS\1stAMCOMPLAINT.DOC

1  practices at issue, who have not received compensation for labor provided without meal period

2  breaks, and who have failed to receive accurate itemized statements.

3        8.     Watson-Smith is an adequate and proper class representative.  Watson-Smith brings

4  this action in her individual capacity, on behalf of all others similarly situated, and, pursuant to

5  California Business & Professions Code §17204, on behalf of the general public.  Plaintiff

6  Watson-Smith was and is employed by Spherion in California, within the four years preceding the

7  filing of this Complaint, and paid on an hourly basis.  While employed by Spherion, Plaintiff

8  Watson-Smith was required to work without meal period breaks as defined and required by law.

9  Defendant failed to provide Watson-Smith, and all other similarly situated Spherion California

10  employees, with off-duty meal period breaks, compensation for the lack of said breaks, and failed

11  to provide Watson-Smith and all others similarly situated California employees with an accurate

12  itemized statement.  While employed by Defendant, Plaintiff was and is required to incur

13  employment related expenses.  Defendant failed to reimburse Plaintiff, and similarly situated

14  employees of Defendant, for employment-related expenditures.  It was and is Defendant's policy

15  and practice to require out of workplace travel by persons employed in California, and fail to pay

16  reimbursement for mileage expenses by said employees.  Defendant's policy and practice also

17  requires persons to use cellular phones to perform their jobs and fails to reimburse for expenses

18  incurred by said employees to use the cellular phones.  Said policy and practice was uniformly

19  applied to Plaintiff and class members.

20        9.     Defendants are, and at all relevant times were, employers under applicable

21  California Industrial Welfare Commission Orders.

22        10.    This action seeks relief on behalf of a class of persons in the employ of Spherion in

23  California within four years preceding the filing of this complaint and the present comprised of:

24       <u>Class A</u>

25          <u>Subclass 1</u>

26

27          Persons paid on an hourly basis working on a customer site for whom Spherion electronic time records depict a meal period not taken, and who did not receive a compensation payment by Spherion for the lack of a meal period in said pay period.

28

FIRST AMENDED COMPLAINT        -3-        3154\PLEADINGS\1stAMCOMPLAINT.DOC

<u>Subclass 2</u>

Persons paid on an hourly basis working on a customer site without the presence of a Spherion supervisor for whom Spherion time records depict a meal period not taken, and who did not receive a compensation payment by Spherion for the lack of a meal period in said pay period.

<u>Class B</u>

Persons for whom work duties included employee supplied vehicular travel;

<u>Class C</u>

Persons paid on an hourly basis placed by Spherion with Cisco Systems as recruiters.

11.     The class is sufficiently numerous, since it is estimated to include approximately 2,000 or more Spherion employees geographically dispersed throughout California, the joinder of whom in one action is impracticable, and the disposition of whose claims in a class action will provide substantial benefits to both the parties and the Court.

12.     There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented.  The questions of law and fact common to the Class predominate over questions that may affect individual class members, including but not limited to the following:

    (a)    whether Spherion implemented and engaged in a systematic practice whereby it unlawfully failed to provide hourly employees meal period breaks and failed to pay employees for the lack of meal breaks as required by law;

    (b)    Whether it was and is Defendant's policy and practice to require out of office employee supplied automobile travel by persons employed in California, and fail to pay reimbursement for mileage expenses by said employees;

    (c)    Whether it was and is Defendant's policy and practice to require employees to use cellular telephones and fail to pay reimbursement for cellular telephone expenses by said employees;

1        (d)    Whether it was and is Defendant's policy and practice to require employees

2               who worked as recruiters and Spherion placed with Cisco Systems to work

3               in excess of 8 hours per day and 40 hours per week without overtime pay;

4        (d)    whether Spherion implemented and engaged in a systematic practice

5               whereby it failed to provide accurate itemized statements to California

6               hourly employees;

7        (e)    whether the systematic acts and practices of Spherion as alleged herein

8               violated, inter alia, applicable provisions of the California Labor Code,

9               including but not limited to, Sections 226, 226.7, 512, 2802, 1194, and

10              2698, and applicable Industrial Welfare Commission Orders, and California

11              Business & Professions Code § 17200, et seq.

12    13.    Because Plaintiff worked on a daily and weekly basis, routinely worked through

13  meal breaks as depicted on Spherion records for which Plaintiff was not properly compensated,

14  was routinely required to incur mileage and cellular telephone expenses for which Plaintiff was

15  not reimbursed, routinely worked in excess of 8 hours per day and 40 hours per week without

16  overtime pay, and failed to receive timely and accurate itemized statements, Plaintiff is asserting

17  claims that are typical of the claims of the Class.

18    14.    Plaintiff will fairly and adequately represent and protect the interests of the Class in

19  that he has no disabling conflict of interest that would be antagonistic to those of the other

20  members of the Class.  Plaintiff has retained counsel who are competent and experienced in the

21  prosecution of class action wage and hour violations.

22    15.    Because Plaintiff and the members of the Class have all similarly suffered

23  irreparable harm and damages as a result of Spherion's unlawful and continuously wrongful

24  conduct, including but not limited to Spherion's systematic failure to provide for meal period

25  breaks, and systematic failure to pay for meal break periods worked, class treatment is especially

26  appropriate.  Because the hours worked and employment circumstances by Spherion employees

27  and class members follow common patterns, all of which are reflected in the records possessed by

28

1    Spherion, this action will provide substantial benefits to both.  Absent this action, Spherion's

2    unlawful conduct will continue unremedied and uncorrected.

3                                      **FIRST CAUSE OF ACTION**

4    **(Failure To Provide Meal Period Breaks And Accurate Wage
     Statements Pursuant To California Labor Code Sections 226, 226.7, 512)**

5

6           16.    Plaintiff Watson-Smith hereby incorporates by reference the allegations contained

7    in paragraphs 1-15 of this Complaint as if fully set forth herein.

8           17.    During all relevant periods, Defendant illegally and unlawfully required Plaintiff

9    Watson-Smith and class members to work through meal period breaks.

10          18.    During all relevant periods, both the California Labor Code and the pertinent wage

11   orders required that Plaintiff Watson-Smith and class members be compensated for the absence of

12   meal period breaks.  Spherion failed to compensate Plaintiff and class members for the lack of

13   meal periods as required by law.  Plaintiff and class members are entitled to recover their unpaid

14   compensation arising there from.

15          19.    By unlawfully requiring Plaintiff and class members to work without meal breaks

16   and in failing to properly compensate Plaintiff and class members for the lack of meal periods as

17   alleged herein, Spherion acted in willful, oppressive and conscious disregard of Plaintiff and class

18   members' statutory and regulatory right to meal periods and compensation.

19          20.    Plaintiff and the other members of the class are therefore entitled to the relief

20   requested below.

21                                    **SECOND CAUSE OF ACTION**

22

23   **(Failure To Reimburse Employee Expenses Pursuant to Labor Code Section 2802)**

24          21.    Plaintiff incorporates by reference the allegations contained in paragraphs 1-20 of

     this Complaint as if fully set forth herein.

25          22.    During all relevant periods, Defendant failed to reimburse Plaintiff and class

26   members for business related mileage and cellular telephone expenses.  As a result, Defendant

27   failed to pay the Plaintiff and class members expense reimbursements owed by law.  Plaintiff and

28   class members are entitled to recover their unpaid expenses and penalties arising there from.

FIRST AMENDED  COMPLAINT                    -6-          3154\PLEADINGS\1stAMCOMPLAINT.DOC

23.    Plaintiff and class members are therefore entitled to the relief requested below.

## THIRD CAUSE OF ACTION

### (Failure To Pay Overtime Wages Pursuant to Labor Code Section 1194)

19.    Plaintiff repeats and re-alleges each and every allegation set forth in all of the foregoing paragraphs as if fully set forth herein.

20.    During all relevant periods, Defendant required Plaintiff and class members to work shifts in excess of eight hours per day, and to work in excess of forty hours per week.

21.    During all relevant periods, both the California Labor Code and the pertinent wage orders required that all work performed by an employee in excess of eight hours in any workday, on the seventh day of work in any workweek, or in excess of forty hours in any workweek be compensated at one and one-half times the employee's regular rate of pay.  Defendant failed to compensate Plaintiff and class members for overtime hours they worked in excess of eight hours in any workday or in excess of forty hours in any workweek, at one and one-half times a rate of pay, based upon their regular rate of pay.  As a result, Defendant's failed to pay Plaintiff and class members earned overtime wages and failed to provide Plaintiff and Class members itemized statements as required by California Labor Code Section 226.  Plaintiff and class members are entitled to recover their unpaid overtime compensation and liquidated damages arising there from.

22.    Plaintiff and the other members of the class members are therefore entitled to the relief requested below.

## FOURTH CAUSE OF ACTION

### (Unlawful, Unfair And Fraudulent Business Practices Pursuant To Business & Professions Code Sections 17200, et seq.)

24.    Plaintiff and class members incorporate by reference the allegations contained in paragraphs 1-23 of this Complaint as if fully set forth herein.

25.    Business & Professions Code section 17200, et seq. prohibits acts of unfair competition, which shall mean and include any "unlawful business act or practice."

1    26.    The policies, acts and practices heretofore described were and are an unlawful

2  business act or practice because Spherion's failure to provide meal period breaks, failure to pay

3  compensation for work without meal period breaks, failure to reimburse for work related

4  expenses, failure to pay overtime wages, and failure to provide accurate and timely itemized

5  statements violates applicable Labor Code sections, including but not limited to California Labor

6  Code §§ 226, 226.7, 512, 1194, 2802, applicable Industrial Welfare Commission Wage Orders,

7  the Labor Code Private Attorney General Act of 2004, Labor Code Section 2698 et. seq. and other

8  provisions of California common and/or statutory law.  Plaintiff reserves the right to allege

9  additional statutory and common law violations by Defendant.  Such conduct is ongoing to this

10  date.

11    27.    Business & Professions Code §17200, et seq. also prohibits acts of unfair

12  competition, which shall mean and include any "unfair business act or practice."

13    28.    The policies, acts or practices described herein were and are an unfair business act

14  or practice because any justifications for Spherion's illegal and wrongful conduct were and are

15  vastly outweighed by the harm such conduct caused Plaintiff, class members, and the members of

16  the general public.  Such conduct is ongoing to this date.

17    29.    Plaintiff and the other members of the Class are therefore entitled to the relief

18  requested below.

19                              **FIFTH CAUSE OF ACTION**

20         **(Labor Code Private Attorneys General Act of 2004: Labor Code Sec. 2698)**

21

22    30.    Plaintiff incorporates by reference the allegations contained in paragraphs 1-29 of

23  this Complaint as if fully set forth herein.

24    31.    The policies, acts and practices heretofore described were and are an unlawful

25  business act or practice because Spherion's failure to provide meal period breaks, failure to pay

26  compensation for work without meal period breaks, and failure to provide accurate wage

27  statements to Plaintiff and class members violates applicable Labor Code sections and gives rise to

28  statutory penalties as a result of such conduct, including but not limited to penalties as provided by

FIRST AMENDED COMPLAINT          -8-        3154\PLEADINGS\1stAMCOMPLAINT.DOC

1    Labor Code §§ 203, 226.3, 558, and 2699.5, and applicable Industrial Welfare Commission Wage

2    Orders.  Plaintiff, as an aggrieved employee, hereby seeks recovery of civil penalties as prescribed

3    by the Labor Code Private Attorney General Act of 2004 on behalf of herself and other current

4    and former employees of Spherion against whom one or more of the violations of the Labor Code

5    was committed.

6                                                    **PRAYER FOR RELIEF**

7            WHEREFORE Plaintiff prays for judgment and relief as follows:

8            1.       An order certifying that the action may be maintained as a class action;

9
10          2.       Compensatory and statutory damages, penalties and restitution, as appropriate and

11   available under each cause of action, in an amount to be proven at trial based on, inter alia, the

12   unpaid balance of compensation Defendant owes;

13          3.       For punitive damages as appropriate and available under each cause of action;

14          4.       An order enjoining Defendant from pursuing the policies, acts, and practices

15   complained of herein;

16          5.       Costs of this suit;

17          6.       Pre- and post-judgment interest; and,

18          7.       Such other and further relief as the Court deems just and proper.

19

20   Date:  July 28, 2008                              QUALLS & WORKMAN, L.L.P.

21

22                                                By:  _____

23                                                     Daniel H. Qualls
                                                       Attorney for Plaintiff
24

25

26

27

28

FIRST AMENDED  COMPLAINT              -9-           3154\PLEADINGS\1stAMCOMPLAINT.DOC