1   SEYFARTH SHAW LLP
    Gerald L. Maatman, Jr. (SBN 06181016)
2   131 South Dearborn Street, Suite 2400
    Chicago, IL 60603
3   Telephone: (312) (312) 460-5000
    Facsimile: (312) 460-7000
4

5   SEYFARTH SHAW LLP
    Samuel T. McAdam (SBN 186084)
6   Alfred L. Sanderson, Jr. (SBN 186071)
    Anthony J. Musante (SBN 252097)
7   400 Capitol Mall, Suite 2350
    Sacramento, California 95814-4428
8   Telephone: (916) 448-0159
    Facsimile: (916) 558-4839
9

10  Attorneys for Defendant
    Spherion Atlantic Enterprises, LLC sued herein as
11  Spherion Pacific Workforce, LLC

12

13                  UNITED STATES DISTRICT COURT

14              NORTHERN DISTRICT OF CALIFORNIA

15  VALERIE D. WATSON-SMITH, AND ALL      )   Case No. C 07 05774 JSW
    OTHER SIMILARLY SITUATED,             )
16                                        )   **DEFENDANT SPHERION ATLANTIC**
                                          )   **ENTERPRISES, INC.'S**
17           Plaintiff,                   )   **MEMORANDUM OF POINTS AND**
                                          )   **AUTHORITIES IN OPPOSITION TO**
18       v.                               )   **PLAINTIFF'S MOTION TO COMPEL**
                                          )
19  SPHERION PACIFIC WORKFORCE, LLC,      )
    and DOES 1 through 100, inclusive     )
20                                        )   Date:  September 24, 2008
                                          )   Time:  3:00 p.m.
21           Defendant.                   )   Courtroom:  4
                                          )   Judge: Hon. Wayne D. Brazil
22                                        )
                                          )
23

24

25

26

27

28
    ─────────────────────────────────────────────
                  MEMORANDUM OF POINTS AND AUTHORITIES
              IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL
    SC1 17096506.1
    Case No. C 07 05774 JSW

## **Table of Contents**

Page

I. INTRODUCTION AND SUMMARY OF ARGUMENT............................................................1

II. TIMELINE OF DISCOVERY DISPUTE ...............................................................................2

III. BACKGROUND ON SPHERION OPERATIONS................................................................3

     A.     Spherion Is A Multifaceted And Complex Staffing Company...............................3

     B.     Spherion Personnel Serve Thousands Of Clients On A Wide Assortment Of Assignments............................................................................................................4

     C.     Plaintiff's Alleged Classes....................................................................................5

     D.     Responding To Plaintiff's State-Wide Discovery Requests Would Require Thousands Of Work Hours And Will Cost Spherion Hundreds Of Thousands Of Dollars. .................................................................................................................6

IV. ARGUMENT ........................................................................................................................7

     A.     Legal Standard......................................................................................................7

     B.     Plaintiff's Motion To Compel Further Responses To Broad, Premature And Improper State-Wide Discovery (Interrogatory Numbers 4, 9 (Set 2), 9 (Set 3), And Inspection Demands 7, 13 and 14) Should Be Denied. ...................................8

          1.     Plaintiff Is Not Entitled To State-Wide Class Discovery Because She Cannot Make A Prima Facie Showing Of Rule 23 Class-Action Requirements. ...........................................................................................9

          2.     State-Wide Discovery Of Employee Contact Information Should Be Denied Because It Exceeds The Scope Of The Alleged Putative Class....16

          3.     Search For The State-Wide Information Requested Poses An Oppressive, Undue Burden On Defendant Disproportionate To The Potential For Discovery Of Relevant Evidence. ............................................................16

     C.     Current And Former Employees Of Defendant Are Entitled To Object To The Disclosure Of Their Private Contact Information Before It Is Released To Plaintiff's Counsel. ..............................................................................................17

     D.     Plaintiff's Motion To Compel Further Responses To Inspection Demand Nos. 10 and 12 Should Be Denied. ......................................................................................19

V. CONCLUSION......................................................................................................................19

1

**TABLE OF AUTHORITIES**

2

**FEDERAL CASES**

3

Page

4

*Blackie v. Barrack,*
    524 F.2d 891 (9th Cir. 1975) ................................................................................. 9

5

6

*Brown v. Fed. Express Corp.,*
    2008 U.S. Dist. LEXIS 17125 (C.D. Cal. 2008) ............................................... 12

7

*Del Campo v. Kennedy,*
    236 F.R.D. 454 (N.D. Cal. 2006) ................................................................... 7, 10

8

9

*Doninger v. Pacific Northwest Bell,*
    564 F.2d 1304 (9th Cir. 1977) ....................................................................... 9, 10

10

11

*Hatch v. Reliance Ins. Co.,*
    758 F.2d 409 (9th Cir. 1985) ........................................................................... 8, 9

12

13

*Heerwagen v. Clear Channel Communications,*
    435 F.3d 219 (2nd Cir. 2006) ............................................................................. 8

14

15

*Hill v. Eddie Bauer,*
    242 F.R.D. 556 (C.D. Cal. 2007) .................................................................. 8, 18

16

*Jimenez v. Domino's Pizza, LLC,*
    U.S. Dist. LEXIS 66510 (C.D. Cal. 2006) ...................................................... 18

17

18

*Kamm v. California City Development Co.,*
    509 F.2d 205 (9th Cir. 1975) ................................................................ 7, 16, 17

19

20

*Little v. City of Seattle,*
    863 F.2d 681 (9th Cir. 1988) ............................................................................. 7

21

22

*Lumpkin v. E.I. Du Pont de Nemours & Co.,*
    161 F.R.D. 480 (M.D. Ga. 1995) ..................................................................... 10

23

*Mantolete v. Bolger,*
    767 F.2d 1416 (9th Cir. 1985) ..................................................................... 9, 10

24

25

*Martinet v. Spherion Atlantic Enterprises,*
    2008 U.S. Dist. LEXIS 48113 (S.D. Cal. 2008) ................................... 2, 10, 11

26

*Putnam v. Eli Lilly and Co.,*
    508 F. Supp. 2d 812 (C.D. Cal. 2007) ............................................................. 19

27

28

*Ricotta v. Allstate Ins. Co.,*
    211 F.R.D. 622 (S.D. Cal. 2002) ..................................................................... 16

*Rivera v. NIBCO, Inc.,*
    364 F.3d 1057 (9th Cir. 2004) ........................................................................... 9

*Rodriguez v. Department of the Treasury,*
    108 F.R.D. 360 (D.C. Dist. 1985)..................................................................... 10

*Star Editorial, Inc. v. United States Dist. Court for the Cent. Dist. Of Cal. (Dangerfield),*
    7 F.3d 856 (9th Cir. 1993) ......................................................................... 17, 18

*Tracy v. Dean Witter Reynolds,*
    185 F.R.D. 303 (D. Col. 1998) ............................................................. 8, 10, 16

*White v. Starbucks Corp.,*
    497 F. Supp. 2d 108 (N.D. Cal. 2007).............................................................. 12

*Wiegele v. FedEx Ground Package System,*
    U.S. Dist. LEXIS 9444 (S.D. Cal. 2007)......................................................... 18

## STATE CASES

*Belaire-West Landscape, Inc. v. Superior Court,*
    149 Cal. App. 4th 554 (2007) ..................................................................... 17, 18

*Brinker v. Superior Court,*
    2008 Cal. App. LEXIS 1138 (Cal.App.4th Dist. July 22, 2008) ...................... 12

*Bufil v. Dollar Financial Group, Inc.,*
    162 Cal. App. 4th 1193 (2008) .................................................................. 13, 15

*Hicks v. Kaufman and Broad Home Corp.,*
    89 Cal. App. 4th 908 (2001) ............................................................................ 12

*Pioneer Electronics (USA), Inc. v. Sup.Ct. (Olmstead),*
    40 Cal. 4th 360 (2007)............................................................................... 17, 18

*Puerto v. Superior Court,*
    158 Cal. App. 4th 1242 (2008) ....................................................................... 18

## FEDERAL STATUTES

Fed. R. Evid. 501 ................................................................................................ 17

Fed. R. Civ. Proc. 23(b)(3) ................................................................................. 11

Fed. R. Civ. Proc. 26(b)(2) ............................................................................... 8, 9

## STATE STATUTES

Cal Const. Art. 1, § 1 ......................................................................................... 18

1

Labor Code § 226.7 .................................................................................................................. 12

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Defendant Spherion Atlantic Enterprises, LLC ("defendant" or "Spherion") hereby opposes plaintiff Valerie Watson-Smith's motion to compel on the grounds the information requested is overbroad, unduly burdensome and implicates current and former employees' right to privacy. Plaintiff's motion pertains generally to two categories of information.

First, plaintiff seeks to compel the production of state-wide contact information for all of Spherion's hourly employees for the putative class period going back to four years prior to the filing of the complaint. These discovery requests are overbroad and would impose a tremendous burden on defendant totally out of proportion to the potential for the discovery of relevant information. Moreover, the requests are improper and premature because plaintiff cannot make a *prima facie* showing that any sort of state-wide class will be certified.

Plaintiff also seeks contact information relevant to employees who, like plaintiff, worked as a Spherion recruiter with Spherion's client Cisco Systems. The request is more narrowly tailored, however, in order to protect its employees' privacy rights, Spherion must allow the employees in question to object to the production of their personal information. Plaintiff refused to engage in a process that has been approved by virtually every court that has ruled on the issue, and instead unreasonably demanded that the information be immediately and unconditionally turned over. Spherion's refusal to do so in light of its employees' privacy interests clearly is justified.

Spherion is a staffing company with over 50 local offices in California that place thousands of employees at tens of thousands of different job assignments throughout the state. Well over 10,000 employees have worked for Spherion in California since 2003, in almost every industry imaginable, and subject to 15 different California Wage Orders. Plaintiff Watson-Smith is a former Spherion employee who worked as a recruiter at three of Spherion's clients, Kaiser, Cisco and Honeywell. Out of the thousands of employees who have worked for Spherion during the putative class period, there is only a small handful in California (less than 100) who had similar work experiences as Watson-Smith. There is no conceivable way Watson-Smith can

1

1    demonstrate her claims are typical of a putative class of diverse state-wide Spherion employees

2    in thousands of different job assignments across multiple industries. As such, state-wide

3    discovery should not be permitted.

4         Spherion presently is defending a similar action in the Southern District of California

5    captioned *Martinet v. Spherion*, where the plaintiff also purports to represent a state-wide class

6    of current and former Spherion employees. In *Martinet*, like here, the plaintiff sought class-wide

7    discovery. Spherion objected to the discovery and filed a motion for protective order. The Court

8    in *Martinet* granted Spherion's motion, limiting discovery to the employee unit to which the

9    plaintiff was assigned, and to the year in which the employee was employed. *See Martinet v.*

10   *Spherion Atlantic Enterprises*, 2008 U.S. Dist. LEXIS 48113 (S.D. Cal. 2008). The same

11   limitations on discovery should apply here.

12   **II.    TIMELINE OF DISCOVERY DISPUTE**

13        Plaintiff served her initial discovery requests on February 14, 2008, including a demand

14   for documents and interrogatories. (Declaration of Daniel H. Qualls filed in support of Motion

15   to Compel ("Qualls Decl."), Exhs. A, G.) Defendant responded on March 18, 2008, responding

16   to the discovery requests that pertained to plaintiff and Cisco recruiters, but objecting to requests

17   that pertained to employees outside of the Cisco recruiter group. (Qualls Decl., Exhs. B, H.)

18   Plaintiff did not meet and confer regarding defendant's responses until August 7 and 18, 2008,

19   *nearly five months* after receiving the responses and objections.[1] (Qualls Decl., ¶8.)

20        Plaintiff served her second set of interrogatories and document demands on April 14,

21   2008. (Qualls Decl., Exhs. C, I.) Defendant again objected to requests that went beyond the

22   Spherion Cisco recruiter group. (Qualls Decl., Exhs. D, J.) Plaintiff did not meet and confer

23

24   _____

25   [1] In her opening brief, plaintiff complains that the use of a *Belaire-West* type notice to protect
     employees' privacy rights (*see* Section IV(C) *infra*) would effectively preclude the use of
     putative class information in support of her motion for class certification, which must be filed by

26   November 11, 2008. (Pltf. Mtn., 13:13-17.) By waiting *five months* to bring her motion to
     compel, however, it is plaintiff, not defendant, who has put herself in the timing predicament she

27   describes.

28
     MEMORANDUM OF POINTS AND AUTHORITIES
     IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL

SCI 17096506.1
Case No. C 07 05774 JSW

1   regarding these responses until August 7 and 18, 2008, *nearly four months* after receiving the

2   responses and objections. (Qualls Decl., ¶8.)

3       Plaintiff served her third set of document demands and interrogatories on June 25, 2008.

4   (Qualls Decl., Exhs. E, K.) Defendant responded to these requests on July 17, 2008. Plaintiff

5   met and conferred regarding these responses on August 7 and 18, 2008.[2] (Qualls Decl., ¶8.)

6       Defendant's position throughout these discovery discussions has been consistent.

7   Defendant produced documents and responded to interrogatories relevant to plaintiff in her role

8   as a Spherion recruiter at Cisco. Defendant also consistently objected to state-wide discovery on

9   the grounds the class was overbroad, and incapable of certification. That is where the parties

10  reached an impasse.

11  **III.    BACKGROUND ON SPHERION OPERATIONS**

12      **A.    Spherion Is A Multifaceted And Complex Staffing Company.**

13      Spherion is a staffing company that provides job assignments to thousands of individuals

14  in California and throughout the United States and Canada. (Declaration of Joan L. Orzo, served

15  and filed herewith ("Orzo Decl."), ¶4.) Spherion recruits and hires individuals and assigns them

16  to businesses, government agencies, non-profit entities, and other organizations throughout the

17  country under a variety of different contracts and service agreements. (*Id.*) Spherion supplies

18  temporary employees to almost every industry imaginable, including: retail, healthcare,

19  construction, legal services, manufacturing, pharmaceuticals, commercial and residential real

20  estate, insurance, mortgage and loan, automotive, plumbing, financial services and banking,

21  securities, consumer credit, engineering, waste collection, education, public utilities, airline,

22  cable and internet, media, business services, packaging and shipping, food services, beverage

23  and wine, bottling, computers and electronics, entertainment and motion picture, transportation,

24  travel and hotel, agriculture, marketing and advertising, telecommunications, publishing,

25  _____

26  [2] On August 6, 2008, Plaintiff served her fourth set of interrogatories (erroneously labeled as the
    "third" set of interrogatories). This set included only one interrogatory, which was duplicative of
27  previously served interrogatory number 6.

28                                            3

1  internet, information technology, charitable and religious, military, county and city government,

2  and numerous state agencies. (*Id.*)

3      There currently are over 600 local Spherion offices throughout the United States.

4  (Declaration of Alfredo Echeverria, served and filed herewith ("Echeverria Decl."), ¶4.)   Over

5  the last four years, there have been between 45 and 58 local offices in California. (*Id.*)   In

6  addition, there currently are 9 Spherion licensees and 2 Spherion franchisees in California. (*Id.*)

7  Some Spherion offices are operated directly by the company and service a number of clients in a

8  particular area. (Orzo Decl. ¶7.)   Other offices are located on the premises of a particular client's

9  office, where Spherion only services that particular client. (*Id.*)   Yet other offices are run by

10  franchisees or licensees. (*Id.*)

11      Spherion has a multi-layered organizational structure, containing two primary business

12  units/divisions – Staffing Services and Professional Services. (Orzo Decl. ¶11.)   Within each

13  unit/division there are multiple employee classifications with thousands of different job titles.

14  (*Id.*)   Within each classification and job title there are employees performing a wide range of

15  activities and duties in a variety of different industries for a variety of different clients. (*Id.*)   In

16  addition to personnel that Spherion places on assignment, Spherion has a number of full-time

17  employees who work in local offices and manage Spherion's day-to-day operations. (Orzo Decl.

18  ¶6.)

19  **B.      Spherion Personnel Serve Thousands Of Clients On A Wide Assortment Of**
20  **Assignments.**

21      Spherion serves over 3,000 clients with over 15,000 locations in California, on thousands

22  of different projects and assignments. (Echeverria Decl. ¶5.)   Spherion's clients range from large

23  fortune 500 companies to small local (mom-and-pop) businesses. (*Id.*)   Spherion's clients also

24  include government agencies, charitable and religious organizations, and non-profit entities.

25  (*Id.*) Although Spherion has some longstanding clients, there is a high rate of attrition among a

26  portion of Spherion's clientele as businesses and organizations come and go or sporadically use

27

28

4

1   Spherion's services.  Spherion's clientele and the assignments it recruits for change on a daily

2   basis.  (Orzo Decl. ¶9.)

3          Each year, Spherion recruits thousands of individuals in California for assignments at

4   thousands of different locations, with thousands of different clients.  (Echeverria Decl. ¶6.)

5   Spherion personnel provide a wide range of services including general labor and production

6   work, administrative and office support, managerial and professional work, and skilled, technical

7   and scientific work.  (Orzo Decl. ¶5.)  Spherion personnel may support or supplement regular

8   workforces; provide assistance in special work situations such as employee absences, skill

9   shortages, and seasonal workloads; or perform special assignments or projects.  (*Id.*)

10  Assignments last anywhere from a few hours to multiple days, weeks, months, or even years.

11  (Orzo Decl. ¶5.)

12         The duties and working conditions of Spherion personnel vary according to the account

13  and project to which they are assigned.  (Orzo Decl. ¶6.)  An employee's job title may or may

14  not accurately describe what he or she actually does on a day-to-day basis as job duties and

15  requirements are unique to each client.  (Orzo Decl. ¶11.)  The job duties of a Spherion employee

16  are highly dependent on individual client and customer needs.  (*Id.*)  The terms of an assignment

17  also frequently are dictated by a contractual agreement between Spherion and its client.  (Orzo

18  Decl. ¶10.)  These contractual agreements often involve multiple parties when, for example,

19  Spherion provides staffing for the customers of a client.  (*Id.*)

20         Although Spherion has general policies, many of Spherion's policies are customized or

21  modified at the local branch offices or by the franchisees or licensees.  These policies are further

22  modified and customized for individual clients, their customers, and various projects.  Actual

23  procedures and practices vary widely from office to office, client to client, and project to project.

24  (Orzo Decl. ¶8.)

25  **C.     Plaintiff's Alleged Classes.**

26         Plaintiff filed the present complaint on behalf of herself and also on behalf of the hourly

27  Spherion employees who within the last four years fell within one of three sub classes: (A)

28

                                          5

1    "persons paid on an hourly basis for whom Spherion records depict a meal period not taken who

2    did not receive a compensation payment by Spherion for lack of said meal period;[3] (B) persons

3    for whom work duties included employee supplied vehicular travel; and (C) persons paid on an

4    hourly basis placed by Spherion with Cisco Systems as recruiters." (Complaint, ¶10.)  The

5    complaint alleges violations of California's wage and hour laws related primarily to the payment

6    of overtime, business expenses, and the provision for meal periods. (Complaint, ¶6.)

7        Of note, plaintiff's motion to compel *only* involves subclasses A and C. (*See* plaintiff's

8    Memorandum of Points and Authorities in support of Motion to Compel, at 3:18-22 (two claims

9    relevant to motion are claim based on alleged failure to provide meal periods and an off-the-

10   clock overtime wage claim).)  Plaintiff's alleged expense reimbursement claim (Class B) is not

11   at issue here.

12   **D.    Responding To Plaintiff's State-Wide Discovery Requests Would Require
             Thousands Of Work Hours And Will Cost Spherion Hundreds Of
13           Thousands Of Dollars.**

14       Joan Orzo, a corporate HR manager for Spherion, has reviewed plaintiff's state-wide

15   discovery requests and has concluded that responding to the requests "would be a gargantuan

16   task" that would require 24,800 hours at a total expense exceeding $550,000. (Orzo Decl. ¶15.)

17   As Orzo describes, searching for and gathering all the requested documents and information

18   would take an enormous amount of time because thousands of individualized inquiries would

19   have to be made – client by client and assignment by assignment. (*Id.*)  Many if not most clients

20   would have to be individually contacted and document searches would have to take place at

21   numerous branch offices and client locations. (Orzo Decl. ¶17.)  There have been thousands of

22   different projects staffed by Spherion employees over the last several years. To identify, review

23   and gather all the different information requested by plaintiff would require a tremendous

24   amount of work. (Orzo Decl., ¶15.)

25   _____

26   [3] A motion to amend is presently pending before District Judge White. The proposed

27   amendment would slightly alter the first class definition above, but not in any significant manner
     that would affect the outcome of this motion.

28                                              6
                     MEMORANDUM OF POINTS AND AUTHORITIES
                 IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL
     SCI 17096506.1
     Case No. C 07 05774 JSW

1    To search for the information and documents sought by plaintiff, an elaborate three step

2  information gathering process, involving over one hundred different Spherion employees at three

3  different levels of the company (not including the frequent involvement of Spherion's clients)

4  would be required. (Orzo Decl. ¶¶ 17-20.) The first step would involve an HR manager

5  initiating contact with each branch office, licensee, or franchisee (of which combined there are

6  over 50 in California), communicating the requested information, and identifying a plan of

7  action. (Orzo Decl. ¶18.) The next step would require a branch manager, with the help of a

8  branch-level employee (such as a Client Services Supervisor ["CSS"]) to generate a list of clients

9  and accounts for the time period in question, and to search for any responsive documents kept at

10  the branch office level. (Orzo Decl. ¶19.)

11    The third step would be the most taxing and would require at least one CSS employee at

12  each office location to investigate and attempt to find the requested information and documents

13  applicable to each client/customer site, and/or each project or assignment. (Orzo Decl. ¶20.) In

14  some instances, customers of the client would have to be contacted and asked to search for

15  information and/or documents. (*Id.*) This step alone likely would take an estimated 8 hours for

16  each of over 3,000 clients (over 24,000 man hours). (Orzo Decl.¶23.)

17    In summary, responding to plaintiff's discovery requests at issue here would require an

18  estimated 24,960 hours, which is the equivalent of 3,120 work days or over 12 work years.

19  (Orzo Decl. ¶¶ 15-23; Echeverria Decl. ¶8.) The total cost of responding to plaintiff's statewide

20  discovery requests is estimated at $585,000. (*Id.*)

21  **IV.    ARGUMENT**

22    **A.    Legal Standard**

23    A district court enjoys broad discretion in controlling discovery. *Little v. City of Seattle*,

24  863 F.2d 681, 685 (9th Cir. 1988). Prior to certification of a class action, discovery is generally

25  limited and in the discretion of the court. *Kamm v. California City Development Co.*, 509 F.2d

26  205, 209-210 (9th Cir. 1975); *Del Campo v. Kennedy*, 236 F.R.D. 454, 459 (N.D. Cal. 2006). In

27  fact, district courts have the authority to and often exercise their discretion to impose

28

7

MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL

1  prohibitions or limitations on class discovery. *See Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 416

2  (9th Cir. 1985) (finding court has discretion to deny plaintiff's attempt to obtain discovery in

3  order to solicit support for his effort to certify a class); *Heerwagen v. Clear Channel*

4  *Communications*, 435 F.3d 219, 234 (2nd Cir. 2006) (holding significant limitations on pre-class

5  certification discovery implemented by district court were not an abuse of discretion); *Hill v.*

6  *Eddie Bauer*, 242 F.R.D. 556, 564-565 (C.D. Cal. 2007) (limiting pre-class certification

7  discovery to a sample of defendant's documents); *Tracy v. Dean Witter Reynolds*, 185 F.R.D.

8  303, 304 (D. Col. 1998) (restricting discovery to one of defendant's 400 offices prior to class

9  certification).

10          Northern District Local Rule 37-2 requires a party compelling discovery to provide a

11  *detailed* basis for why the party believes it is entitled to the requested discovery, and *must* show

12  how the *proportionality* and other requirements of Federal Rule of Civil Procedure 26(b)(2) are

13  satisfied. Here, the proportionality requirements of Federal Rule of Civil Procedure 26(b)(2)

14  clearly *cannot* be met, and plaintiff has not presented any evidence whatsoever in an effort to

15  prove that they are.

16      **B.    Plaintiff's Motion To Compel Further Responses To Broad, Premature And
             Improper State-Wide Discovery (Interrogatory Numbers 4, 9 (Set 2), 9 (Set
17           3), And Inspection Demands 7, 13 and 14) Should Be Denied.**

18          Interrogatory number 4 and inspection demand number 7 seek contact information for *all*

19  Spherion hourly employees in California who complained about the absence of meal periods, and

20  documents relating to any such complaints. Interrogatory number 9 (Set 2) seeks contact

21  information for *all* Spherion hourly flex or temporary staff in California who worked without

22  Spherion supervision on site. Interrogatory number 9 (Set 3) seeks contact information for *all*

23  Spherion branch employees in California who processed timesheets. Inspection Demand number

24  13 requests Spherion to produce "*ALL* staffing agreements" between Spherion and California

25

26

27

28                                           8

1  customers in effect between September 27, 2007 and the present.[4]  Inspection Demand number

2  14 asks defendant to produce "*ALL* forms/exemplars" of manual timesheets for use by California

3  hourly temporary employees who worked on client sites from September 1, 2003 to the

4  present."[5]

5      Despite the fact that plaintiff's only experience with Spherion is working as a recruiter,

6  she seeks to obtain private information related to tens of thousands of current and former

7  employees throughout the state who worked in myriad other lines of work.  The discovery

8  requests are overbroad on their face.

9        **1.      Plaintiff Is Not Entitled To State-Wide Class Discovery Because She
               Cannot Make A *Prima Facie* Showing Of Rule 23 Class-Action**
10            **Requirements.**

11      Although plaintiffs may be permitted to conduct pre-class certification discovery, courts

12  do not condone "fishing expedition" type discovery and impose reasonable limitations as to the

13  discovery scope.  *Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985); *Doninger v. Pacific*

14  *Northwest Bell*, 564 F.2d 1304, 1312-13 (9th Cir. 1977).  "The district judge may reasonably

15  control discovery to keep the suit within manageable bounds, and to prevent fruitless fishing

16  expeditions with little promise of success."  *Blackie v. Barrack*, 524 F.2d 891, 906 (9th Cir.

17  1975); *see also Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1063 (9th Cir. 2004) (quoting Federal

18  Rule of Civil Procedure 26(c)(1)) (stating "District courts need not condone the use of discovery

19  to engage in "fishing expedition[s].")  It is within the district court's discretion to deny plaintiff's

20  attempt to obtain discovery in order to solicit support for his effort to certify a class.  *Hatch v.*

21  *Reliance Ins. Co.*, 758 F.2d 409, 416 (9th Cir. 1985).

22      Indeed, the Ninth Circuit has long required that a plaintiff make a *prima facie* showing of

23  the Rule 23 class-action requirements prior to permitting class-wide discovery.  *Doninger, supra,*

---

[4] Defendant has produced the Staffing Agreement between Spherion and Cisco that was effective during plaintiff's employment as a Spherion Cisco recruiter. (Declaration of Alfred L. Sanderson Jr. ("Sanderson Decl."), filed and served herewith, ¶2.)
[5] Defendant already has produced exemplars of manual timesheets used by Spherion employees. (Sanderson Decl., ¶2.)

MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL
SCI 17096506.1
Case No. C 07 05774 JSW

1    564 F.2d at 1312-13; *Mantolete, supra*, 767 F.2d at 1424; *Del Campo v. Kennedy*, 236 F.R.D.

2    454, 459 (N.D. Cal. 2006). "Although in some cases a district court should allow discovery to

3    aid the determination of whether a class action is maintainable, the plaintiff bears the burden of

4    advancing a *prima facie* showing that the class action requirements of [Rule 23] are satisfied or

5    that discovery is likely to produce substantiation of the class allegations." *Mantolete, supra*, 767

6    F.2d. at 1424.[6]

7          For example, in *Tracy v. Dean Witter Reynolds, Inc.*, the district court limited class

8    discovery to one of defendant's offices and rejected plaintiffs' attempt to extend discovery to 400

9    of defendant's geographically dispersed offices. *Tracy v. Dean Witter Reynolds*, 185 F.R.D. 303,

10   304-305 (D. Col. 1998). Citing *Mantolete*, the court found that before class-wide discovery was

11   allowed, plaintiffs must demonstrate that there was some factual basis for plaintiffs' claims of

12   class-wide harm: "[P]laintiffs have not persuaded me that any discovery beyond [defendant's

13   local office] is likely to produce substantiation of the class allegations which they have

14   made...[E]xtended discovery should not be allowed to plaintiffs if they can present no evidence,

15   or if they present insufficient evidence, to warrant a conclusion that extended discovery is

16   reasonably likely to yield support for the class allegations which have been made, particularly if

17   the extended discovery will result in prejudice to [defendant]." *Id.* at 305, 312.

18         Closer to home, Magistrate Judge Anthony Battaglia recently decided a motion for

19   protective order brought by Spherion in the Southern District of California. *See Martinet v.

20   Spherion Atlantic Enterprises, LLC*, 2008 U.S. Dist. LEXIS 48113 (S.D. Cal. June 20, 2008).

21   The issues presented in *Martinet* are identical to those presented here. In *Martinet*, the plaintiff

22

---

23   [6] Courts also have denied class certification without permitting *any* class certification discovery
     where plaintiff failed to establish a reasonable basis for class treatment. *See Doninger supra*,
24   564 F.2d at 1312-13 (upholding district court's denial of class certification prior to discovery
     because there was no reasonable possibility that plaintiff could satisfy Rule 23); *Lumpkin v. E.I.
25   Du Pont de Nemours & Co.*, 161 F.R.D. 480, 481 (M.D. Ga. 1995) (refusing to order discovery
     from defendant and striking class allegations because the record failed to show any basis for
26   further pursuit of a class action); *Rodriguez v. Department of the Treasury*, 108 F.R.D. 360, 361-
     362 (D.C. Dist. 1985) (denying class certification before discovery based on evidence
27   demonstrating the Rule 23 requirements of numerosity and typicality were not met).

28                                              10

1    sought state-wide discovery for the entire class period of records and documents related to, *inter*

2    *alia*, Spherion's compliance with meal period requirements. *Id.* at *3-4. Judge Battaglia granted

3    Spherion's motion in part, limiting the scope of plaintiff's discovery to the San Diego County

4    office where Martinet was employed, and to the year in which Martinet was employed with

5    Spherion. *Id.* at *6. The court found that the plaintiff failed to demonstrate good cause

6    warranting the type of expansive discovery plaintiff seeks here. *Id.*

7         For the same reasons as those set forth in *Dean Witter* and *Martinet*, the Court should

8    limit the scope of plaintiff's discovery to recruiters assigned to the same Spherion Branch office

9    to which plaintiff was assigned, and the time period for which she was employed. As set forth

10   below, plaintiff has not presented the Court with any evidence that she can establish a case for a

11   state-wide class of hourly Spherion employees. Indeed, the evidence is stacked against her.

12                     **a.    Standard For Class Certification.**

13        Under Federal Rule of Civil Procedure 23(a), the requirements for a class action are:

14   (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions

15   of law or fact common to the class, (3) the claims or defenses of the representative parties are

16   typical of the claims or defenses of the class, and (4) the representative parties will fairly and

17   adequately protect the interest of the class. In addition to these requirements, Rule 23(b) requires

18   that "the questions of law or fact common to the members of the class predominate over any

19   questions affecting only individual members, and that a class action is superior to other available

20   methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. Proc. 23(b)(3).

21        Plaintiff brought her complaint on a speculative, overly broad meal period theory she

22   hoped to substantiate with discovery. The state-wide discovery requested is not based on any

23   *prima facie* showing of class certification requirements whatsoever.

24                     **b.    Class Certification Of Plaintiff's Alleged Meal Period Claim Is
25         Highly Unlikely.**

26        To determine whether common questions of law or fact predominate and class

27   certification is appropriate, a court "*must* examine the issues framed by the pleadings and the law

28                                  11

1    applicable to causes of action alleged." *Brinker v. Superior Court*, 2008 Cal.App. LEXIS 1138

2    (Cal.App.4th Dist. July 22, 2008) at \*29 (quoting *Hicks v. Kaufman and Broad Home Corp.*, 89

3    Cal.App.4th 908, 916 (2001). Relying on *White v. Starbucks Corp.*, 497 F.Supp.2d 108 (N.D.

4    Cal. 2007) and *Brown v. Fed. Express Corp.*, 2008 U.S. Dist. LEXIS 17125 (C.D. Cal. 2008), the

5    Court in *Brinker* determined that Labor Code section 226.7 and the Wage Orders do not require

6    employers to *ensure* that employees actually take meal breaks. *Brinker,* 2008 Cal. App. LEXIS

7    1138, at \* 59. Instead, employers need only make meal periods *available* to employees. *Id.* at \*

8    61. Because the reasons why employees may not have taken meal breaks that were made

9    available are many, the court found individualized issues predominated and denied class

10    certification. *Id.* at \* 68.

11       The court in *Brinker* rejected plaintiffs' evidence of purported missed meal breaks – time

12    cards indicating meal periods were not taken – without further evidence of *why* the meal breaks

13    were not taken:

14      ... the evidence does not show that Brinker had a class-wide policy that
15      prohibited meal breaks. The evidence in this case indicated that some employees
      took meal breaks and others did not. For those who did not, the reasons they
16      declined to take a meal period requires individualized adjudication. Further,
      plaintiffs' statistical and survey evidence does not render the meal break claims
17      one in which common issues predominate. While time cards might show when
      meal breaks were taken and when there were not, they cannot show *why.*
18

19    *Id.* at \* 70-71 (emphasis in original).

20       Here, just as in *Brinker*, plaintiff does not rely on any alleged class-wide policy that

21    precluded Spherion employees from taking their meal periods.   In fact, just as in *Brinker*,

22    plaintiff apparently is attempting to rely upon *records* depicting meal periods not recorded.  Even

23    if such records existed, as in *Brinker*, they would only tell one-half of the story.  They would not

24    explain *why* the meal period was not taken.  Indeed, lack of a documented meal period could be

25    the result of any number of factors, including, *inter alia*, the following:

26      •   The employee waived the meal period and decided to work through it;

27      •   The employee took the meal period but inadvertently failed to record it;

28

12

- The employee took the meal period but did not affirmatively indicate that he or she took it on the time card;

- The employee took the meal periods but the data was entered into time sheets erroneously;

- The employee's meal period was taken pursuant to the client's policy, but the employee failed to indicate as much on his or her Spherion time sheet.

Under *Brinker*, plaintiff's purported state-wide meal period class cannot be certified, and state-wide discovery related to the putative class therefore should not be allowed.[7]

### c.    Watson-Smith's Work Experience Is Not Typical Of Employees In A State-Wide Meal Period Class.

Watson-Smith cannot demonstrate that her claims are typical of a putative class of diverse state-wide Spherion employees in thousands of different job assignments across multiple industries. Watson-Smith's job duties, assignment, and employment were very unique. During the time she was a Cisco Recruiter, Watson-Smith's supervisor never told her she had to be at work at any particular time, did not tell her that she could not take a break, did not tell her what time she had to leave at the end of the day, and in fact never discussed the terms and conditions of employment with her. (Deposition of Watson-Smith ("Watson-Smith depo."), at 101:12-24.)[8] In fact, her supervisor did not know when she arrived at work and left, nor what her schedule was. (Watson-Smith depo., 94:1-5.)

In other words, during her stint as a Cisco recruiter, Watson-Smith worked autonomously without any oversight from her manager as to her work hours or meal periods taken. Watson-Smith's work experiences therefore are as typical of thousands of Spherion employees in thousands of unique assignments, as a high level Hewlett Packard IT consultant would be to a

---

[7] Plaintiff likely will argue that *Bufil v. Dollar Financial Group, Inc.*, 162 Cal.App.4th 1193 (2008) supports her proposed class and subclass definitions. *Bufil*, however, is distinguishable. In *Bufil*, Defendant had a policy in place that required employees who worked alone or with a trainee to not take meal or rest breaks. *Id.* at 1198. In other words, in *Bufil* the court could identify those employees who did not take a meal period by simply identifying those who worked alone or with a trainee. Here, Spherion had no such policy and meal period practices may have varied client by client. (Deposition of Joan Orzo 42:25-43:17 (excerpt attached as Exhibit A to Sanderson Decl.). )

[8] Excerpts from the deposition of Watson-Smith are attached as Exhibit B to the Sanderson Decl.

13

1  Wal-Mart retail clerk.  These diverse ranges of employees simply cannot be stockpiled into one

2  group for class certification purposes.  Only 15-25 other California employees performed a job

3  similar to Watson-Smith at any one time.  (Watson-Smith depo., 48:16-49:20.)  Watson-Smith

4  simply cannot be representative of all other Spherion California hourly employees during the

5  class period.

       d.     **Common Issues Cannot Predominate Among A Putative Class
              That Encompasses Myriad Diverse Employees And Industries.**

8       A state-wide class of current and former Spherion hourly employees consists potentially

9  of over 10,000 employees working in almost every industry imaginable, with thousands of

10  different job descriptions, and subject to 15 different California Wage Orders.  There are no

11  common questions of law or fact among a group of employees this diverse and subject to

12  numerous different regulations.  There is no authority or precedent for finding commonality

13  among a group of employees that crosses so many different industries and job descriptions.

14  Indeed, Watson-Smith's purported class in this case is analogous to a class-action lawsuit

15  brought against 3,000 of the state's employers in numerous different industries across the state.

16  Obviously, that broad of a class would fail to meet Rule 23 requirements.

17       With thousands of different job titles, countless job duties, and a plethora of

18  individualized job assignments, a legion of individual issues will surely predominate over any

19  common issues plaintiff might be able to raise.  Perhaps the only common thread among the

20  entire proposed class is at one time or another they were paid by Spherion.  Beyond this sole

21  shared experience, each employee or set of employees working on a particular assignment has

22  been subject to different working environments, different job types, different client-specific

23  procedures, different management and supervision structures, different site or assignment-

24  specific practices and customs, different work orders or contracts, different instruction and

25  training, and different time-recording practices and systems.  For every alleged common issue,

26  there will be at least 3,000 individual inquiries that must be made (representing the number of

MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL

SCI 17096506.1
Case No. C 07 05774 JSW

1 | Spherion's California clients). The issues will further splinter from there to 15,000 different site-
2 | specific inquiries with a staggering number of job assignment permutations.

3 |     Plaintiff's own testimony proves this point. At her deposition, plaintiff testified about her
4 | duties while serving as a Spherion recruiter with Kaiser, and contrasted those duties with
5 | working as a Spherion recruiter at Cisco. With Kaiser, Watson-Smith testified she initially did
6 | not record or take a thirty minute meal period. (Watson-Smith depo., 121:15-124:18.) At some
7 | point during her employment at Kaiser, a Spherion branch office employee *directed* Watson-
8 | Smith to record and take her thirty minute meal period. (*Id.*) Thereafter, at Kaiser, Watson-
9 | Smith recorded and took her meal period. (*Id.*) While she was at Cisco, Watson-Smith claimed
10 | she "very rarely" took her meal period, allegedly because she was too busy, although none of her
11 | supervisors ever told her she was not entitled to a meal break. (Watson-Smith depo., 108:13-
12 | 109:15; 111:21-112:4.) Therefore, according to her testimony, Watson-Smith's meal period
13 | experiences during her employment as a Spherion recruiter ran the gamut: first, she did not know
14 | she was entitled to a meal period and neither took nor recorded one; second, she was directed to
15 | record and take her meal period, which she did; and third, she knew she was entitled to take a
16 | meal period but did not take it. *Based solely on her own testimony*, inconsistencies and
17 | individual issues predominate, not common ones. Thus, common issues clearly cannot
18 | predominate for the larger, more diverse putative class plaintiff seeks to certify. Plaintiff has
19 | presented no evidence to the contrary.

20 |     Because plaintiff has not presented the Court with any proof that common issues
21 | predominate among a state-wide class of Spherion employees, her state-wide discovery requests
22 | should be denied, particularly in light of the incredible burden and enormous cost it would
23 | impose on Spherion. (*See* Section B(3), *infra*.)

24
25
26
27
28

15

MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL

1
2

     **2.**     **State-Wide Discovery Of Employee Contact Information Should Be Denied Because It Exceeds The Scope Of The Alleged Putative Class.**

3

     Even if the Court were to find that plaintiff is able to make a *prima facie* showing of rule

4

23 requirements, the state-wide discovery nevertheless should be denied because it exceeds the

5

scope of the *defined* class. Plaintiff's alleged meal period class is defined as follows:

6

     Class A

7
8

     Persons paid on an hourly basis for whom Spherion records depict a meal period not taken who did not receive a compensation payment by Spherion for the lack of said meal period.

9

     Plaintiff seeks state-wide contact information for Spherion hourly employees, regardless

10

of whether their records indicate meal periods taken or not. Plaintiff also seeks information

11

pertaining to employee complaints about meal periods, regardless of whether the employees at

12

issue had meal period records indicating meal periods not taken. Plaintiff's discovery on its face

13

exceeds the scope of her purported class definition.

14
15

     **3.**     **Search For The State-Wide Information Requested Poses An Oppressive, Undue Burden On Defendant Disproportionate To The Potential For Discovery Of Relevant Evidence.**

16

     In determining the manner and scope of pre-class-certification discovery, the court must

17

consider its need, the time required, and the probability of discovery resolving any factual issue

18

necessary for class determination. *Kamm, supra*, 509 F.2d at 209-210. District courts should

19

balance the need to promote effective case management, the need to prevent potential abuse, and

20

the need to protect the rights of all parties. *Tracy, supra*, 185 F.R.D. at 305. The discovery

21

should not be "so broad that the discovery efforts present an undue burden to the defendant." *Id.*

22

"Where the necessary factual issues [related to class certification] may be resolved without

23

discovery, it is not required." *Kamm, supra*, 509 F.2d at 209-210.

24

     The unlikely benefits plaintiff will gain from the state-wide discovery requested in this

25

matter cannot outweigh the enormous burden on defendants. *See Ricotta v. Allstate Ins. Co.*, 211

26

F.R.D. 622, 624 (S.D. Cal. 2002) (motion to compel denied because burden and expense of

27

producing every report created by an insurance company outweighed the likely benefit). The

28

16

MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL

SCI 17096506.1
Case No. C 07 05774 JSW

1    burden associated with the time and effort required to produce the discovery requested by

2    plaintiff far outweighs the probability of the discovery resolving any factual issue necessary for

3    class determination. *See Kamm, supra*, 509 F.2d at 209-210 (9th Cir. 1975). Indeed, plaintiff

4    does not specifically argue why the information requested would benefit plaintiff, other than

5    blanketly arguing that the information is "relevant" to the issue of Spherion's meal period

6    policies and practices."

7         As demonstrated above, responding to the state-wide discovery sought by plaintiff would

8    require an estimated 25,160 hours at a total monetary cost of $585,000. (Orzo Decl. ¶¶ 15-23;

9    Echeverria Decl. ¶8.) Plaintiff has not provided the Court with sufficient justification for the

10   requested discovery to impose this type of a burden on defendant.

11        **C.    Current And Former Employees Of Defendant Are Entitled To Object To
                  The Disclosure Of Their Private Contact Information Before It Is Released**
12   **          To Plaintiff's Counsel.**

13        Interrogatory number 6 asks Spherion to "identify" all of its employees who worked as

14   Cisco recruiters in California for the putative class period. "Identify" means the person's name,

15   home address, email, occupation or job title and employer. Spherion cannot produce this

16   information (or any other contact information) without providing current and former employees

17   with written notice of the disclosure and an opportunity to object to the release of their contact

18   information as required by California privacy law. *See Pioneer Electronics (USA), Inc. v.*

19   *Sup.Ct. (Olmstead)*, 40 Cal.4th 360, 373 (2007); *Belaire-West Landscape, Inc. v. Superior Court*,

20   149 Cal.App.4th 554, 560-561 (2007). Since Spherion has a duty to protect the privacy interests

21   of its employees, it suggested to plaintiff that putative class members be given the opportunity to

22   object to the disclosure of their private contact information. Plaintiff unreasonably objected to

23   what has become the norm in disclosing putative class member private information. The Court

24   should deny plaintiff's motion to compel the unconditional disclosure of putative class member

25   private information.

26        Although privacy is not a federally recognized privilege, it is a state recognized privilege

27   in a federal action based upon diversity jurisdiction. Fed. R. Evid. 501; *Star Editorial, Inc. v.*

28                                              17

---

MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL

SCI 17096506.1
Case No. C 07 05774 JSW

1 | *United States Dist. Court for the Cent. Dist. Of Cal. (Dangerfield)*, 7 F.3d 856, 859 (9th Cir.

2 | 1993); *Hill v. Eddie Bauer*, 242 F.R.D. 556, 562 (C.D. Cal. 2007). The existence and the extent

3 | of a state privilege asserted in a diversity case is controlled by California law. *Star Editorial*, 7

4 | F.3d at 859. Thus, current California law interpreting state privacy rights controls on issues of

5 | whether and under what circumstances Spherion must turn over contact information for its

6 | employees over privacy objections.

7 | Spherion's current and former employees have a state constitutionally guaranteed right to

8 | the privacy of their contact information. CAL CONST. art. 1, § 1; *Pioneer, supra,* 40 Cal.4th at p.

9 | 370; *Belaire,* 149 Cal. App. 4th at 560-561 ("The contact information for Belaire-Wests's current

10 | and former employees deserves privacy protection."). California law is clear that "current and

11 | former employees unquestionably have a legitimate expectation of privacy in their address and

12 | telephone numbers." *See Puerto v. Superior Court,* 158 Cal.App.4th 1242, 1252-1253 (2008).

13 | Recognizing the private nature of employee contact information, California courts have required

14 | notice to each affected person of the proposed disclosure and a chance to object to it. *Pioneer,*

15 | *supra,* 40 Cal.4th at p. 372; *Belaire,* 149 Cal.App.4th at 561. The notice procedure provided by

16 | California courts provides employees the opportunity to opt out of having their contact

17 | information disclosed and thus is referred to as an "opt out" procedure.

18 | Federal courts that have addressed the issue in diversity cases have followed the *Pioneer*

19 | and *Belaire* decisions and have ordered opt-out procedures to provide employees with notice and

20 | an opportunity to object to the disclosure of their contact information. *See Medlock v. Taco*

21 | *Bell,* WL 3553147, 2 (E.D. Cal. 2008) ("the Court finds the opt-out procedure is necessary to

22 | protect the privacy interests of the putative class members."); *Salazar v. Avis Budget Group*, Inc.,

23 | WL 2990281, 1 (S.D. Cal. 2007) ("The Court believes it is fair to say that the potential class

24 | members here have a reasonable expectation that Avis will not disclose their contact information

25 | without first obtaining their consent in some form.").

26 | Several of the cases that plaintiff relies on, including *Jimenez v. Domino's Pizza, LLC*,

27 | U.S. Dist. LEXIS 66510 (C.D. Cal. 2006) and *Wiegele v. FedEx Ground Package System*, U.S.

28 |

18

MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL

SCI 17096506.1
Case No. C 07 05774 JSW

1   Dist. LEXIS 9444 (S.D. Cal. 2007), were decided prior to the California Supreme Court decision

2   in Pioneer and/or the subsequent appellate decision in *Belaire*. Moreover, none of the cases that

3   plaintiff relies on, including *Putnam v. Eli Lilly and Co.*, 508 F. Supp. 2d 812 (C.D. Cal. 2007),

4   addresses the opt-out procedure established in *Pioneer* and *Belaire*. Although these federal

5   courts looked to California law to interpret state law privacy rights, the courts did not address the

6   holdings in *Pioneer* or *Belaire*, which established a legitimate expectation of privacy in personal

7   contact information that cannot be waived without notice and an opportunity to opt out of

8   disclosure.

9       Given the above, plaintiff's motion to compel the unconditional disclosure of putative

10  class member private information should be denied.

11      **D.    Plaintiff's Motion To Compel Further Responses To Inspection Demand Nos.
            10 and 12 Should Be Denied.**

12

13      Inspection Demands 10 seeks documents relating to weekly recruiter reports and TAM

14  reports relating to plaintiff. Inspection Demand 12 seeks the same information for all other

15  Cisco recruiters.

16      Defendant responded that it would produce relevant responsive documents that related to

17  plaintiff that were in defendant's possession, custody or control, but objected to the production of

18  recruiter reports as they related to other employees due to other employees' right to privacy.

19  (Qualls Decl., Exh. H.) On further review, defendant discovered that it was not at liberty to

20  produce any reports. Spherion generated TAM or weekly recruiter reports by downloading

21  information from Cisco's Management Metrics Center ("MMC"). (Sanderson Decl. ¶ 5.) The

22  MMC contains information not only on Spherion's Cisco Recruiters, but also on Cisco's own

23  recruiters. Because the data belongs to Cisco, Spherion cannot share the proprietary information,

24  and therefore produced no documents in response to these requests. (*Id.*)

25  **V.    CONCLUSION**

26      For the reasons set forth above, defendant respectfully requests that the Court deny

27  plaintiff's motion to compel in its entirety.

28

19

1   DATED:  September 3, 2008                    SEYFARTH SHAW LLP

2

3

4                                               By_____/s/ Alfred L. Sanderson, Jr.
                                                    Samuel T. McAdam
5                                                   Alfred L. Sanderson, Jr.
                                                    Anthony J. Musante
6                                               Attorneys for Defendants
                                                SPHERION ATLANTIC ENTERPRISES LLC
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                        20
                    MEMORANDUM OF POINTS AND AUTHORITIES
                IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL
SC1 17096506.1
Case No. C 07 05774 JSW