Daniel H. Qualls, Bar No. 109036
Robin G. Workman, Bar No. 145810
Aviva N. Roller, Bar No. 245415
**QUALLS & WORKMAN, LLP**
244 California Street, Suite 410
San Francisco, CA 94111
Telephone: (415) 782-3660
Facsimile: (415) 788-1028

David Sanford, D.C. Bar No. 457933
Meenoo Chahbazi, CA Bar No. 233985
**SANFORD, WITTELS & HEISLER, LLP**
1666 Connecticut Avenue, N.W., Suite 310
Washington, D.C. 20009
Telephone: (202) 742-7780
Facsimile: (202) 742-7776

Grant Morris, D.C. Bar No. 926253
**LAW OFFICES OF GRANT E. MORRIS**
1666 Connecticut Avenue, N.W., Suite 310
Washington, D.C. 20009
Telephone: (202) 742-7783
Facsimile: (202) 742-7776

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VALERIE D. WATSON-SMITH, AND ALL OTHERS SIMILARLY SITUATED,<br><br>Plaintiff,<br><br>vs.<br><br>SPHERION PACIFIC WORKFORCE, LLC, and DOES 1 through 100, inclusive,<br><br>Defendants. | No. C07-05774<br><br>**SUPPLEMENTAL DECLARATION OF DANIEL H. QUALLS IN SUPPORT OF PLAINTIFF VALERIE WATSON-SMITH'S;**<br><br>1) **MOTION TO COMPEL RESPONSES TO PLAINTIFF'S INTERROGATORIES AND INSPECTION DEMANDS; AND**<br><br>2) **PLAINTIFF'S MOTION FOR SANCTIONS**<br><br>Date: September 24, 2008<br>Time: 3:00 p.m.<br>Courtroom: 4, 3rd floor<br>Judge: Honorable Wayne D. Brazil |

I, Daniel H. Qualls, declare as follows:

1. I am an attorney at law, duly licensed to practice before all the courts of the State of California, and am a Partner with the law firm of Qualls & Workman, L.L.P., attorneys of record herein for Plaintiff Valerie Watson-Smith. The following is based on my personal knowledge, and if called upon to do so, I could and would competently testify thereto.

2. On March 19, 2008, the parties submitted a joint letter brief to the Court regarding Plaintiff's motion to compel compliance with the notice for the 30(b)(6) Examinations. In opposition to Plaintiff's request, Spherion stated:

> Because Spherion is primarily a temporary staffing company that places employees with thousands of outside companies in thousands of different job capacities in California, these catagories are excessively overbroad and not subject to common FRCP30(b)(6) testimony.

Spherion also asserted that because it operated over 60 offices in California placing employees with over 9,000 various business performing various jobs, Plaintiff could not establish a prima facie showing of Rule 23 class requirements required to engage in 'state-wide' class discovery on meal period policies and practices.

3. Attached hereto as Exhibit A is a true and correct copy of the Court's April 2, 2008 Order directing Spherion to comply with Plaintiff's 'state-wide' discovery requests and produce requested 30(b)(6) Examination witnesses.

4. Attached hereto as Exhibit B are true and correct copies of exceprts from the deposition testimony of Joan Orzo taken on May 30, 2008.

5. Attached hereto as Exhibit C is a true and correct copy of an exemplar of Plaintiff's Spherion timesheet produced by Spherion in response to Plaintiff's discovery requests.

6. Bates records cited by attorney Sanderson as evidence of Spherion's production of class member timesheet exemplars consist of Plaintiff's timesheets only (with the exception of D00025).

7. As confirmed to Spherion in the meet and confer process preceding this motion, Plaintiff seeks by this motion only the name, addresses (home and email) and telephone numbers of putative class members.

8. In the meet and confer process that preceded this motion, Plaintiff offered to limit the scope of Request No. 7 and Interrogatory No. 4 to only those hourly employees who filed complaints with California governmental agencies or whom submitted written complaints to Spherion's HR department personnel responsible for such complaints. Spherion rejected Plaintiff's proposal.

9. In the meet and confer conference the preceded this motion, Plaintiff proposed to limit to scope of Request No. 13 to exemplars of standardized service contracts used by Spherion in California during the proposed class period. Spherion rejected this proposal.

I declare under penalty of perjury that the foregoing is true and correct and that this Declaration was executed September 10, 2008, in San Francisco, California.

/S/
_____
DANIEL H. QUALLS

# EXHIBIT A.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VALERIE WATSON-SMITH and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SPHERION ATLANTIC ENTERPRISES,<br><br>Defendant. | No. C 07-5774 JSW (WDB)<br><br>ORDER FOLLOWING APRIL 1, 2008, TELEPHONIC HEARING REGARDING DEPOSITIONS NOTICED BY PLAINTIFF UNDER FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6) |

On April 1, 2008, the Court heard oral argument in connection with a letter brief filed jointly by counsel for Plaintiff and Defendant about depositions noticed by Plaintiff under Federal Rule of Civil Procedure ("FRCP") 30(b)(6). Having considered the jointly filed letter brief and the arguments of the parties, the Court ruled from the bench and Ordered that Defendant must produce a witness or witnesses who are competent to testify about the following:

(1) Spherion's policies and practices for granting meal breaks, or compensating for missed meal breaks, for its hourly, non-exempt employees in California from September 2003 through the present;

(2) Spherion's policies and practices for record keeping about meal breaks, or compensating for missed meals, for its hourly, non-exempt employees in California from September 2003 to the present;

(3) Spherion's policies and practices for reimbursement for travel expenses incurred by California employees for travel required by their employment from September 2003 through the present;

(4) Whether, and under what circumstances, employers to whom Spherion sends employees are required or expected to follow Spherion's policies and practices for hourly, non-exempt California employees about:

    (a) granting meal breaks or compensating for missed meals, and

    (b) record keeping about meal breaks and compensation for missed meals;

(5) Whether, and under what circumstances, employers to whom Spherion sends employees are required or expected to follow Spherion's policies and practices for employees about reimbursement for travel expenses incurred by California employees for travel required by their employment.

(6) If some of the employers to whom Spherion sends employees are required or expected to follow Spherion's policies and practices with regard to these matters and some are not, the Rule 30(b)(6) witness(es) that Spherion produces must disclose:

    (a) the number of employers in each of these two categories since September of 2003 (i.e., the number who have been required or expected to follow Spherion's policies in these areas and the number who have not), and

    (b) the approximate number of employees Spherion has sent to the employers in each category since September of 2003.

IT IS SO ORDERED

Dated: April 2, 2008

                                  WAYNE D. BRAZIL
                                  United States Magistrate Judge

# EXHIBIT B.

```
 1              UNITED STATES DISTRICT COURT

 2             NORTHERN DISTRICT OF CALIFORNIA

 3

 4

 5  VALERIE D. WATSON-SMITH, AND ALL )
    OTHERS SIMILARLY SITUATED,       )
 6                                   )
                 Plaintiff,          )
 7                                   )
           v.                        )   No. C07-05774
 8                                   )
    SPHERION PACIFIC WORKFORCE, LLC, )
 9  and DOES 1 through 100,          )
    inclusive,                       )
10                                   )
                 Defendants.         )
11  _____)

12

13

14

15        Deposition of JOAN L. ORZO, taken

16        on behalf of the Plaintiff, at

17        244 California Street, Suite 410,

18        San Francisco, California, commencing

19        at 9:03 a.m., Friday, May 30, 2008,

20        before Karen Moon, Certified Shorthand

21        Reporter No. 12450.

22

23

24

25
```

```
 1      A    Some.
 2      Q    What percentage of staffing services employees
 3  work on customer sites?
 4      A    Majority.
 5      Q    More than 75 percent?
 6      A    Probably.
 7      Q    More than 85 percent?
 8      A    I would guess.
 9      Q    Would that be your best estimate?
10      A    Yes.
11      Q    Are Spherion supervising personnel physically
12  present on-site when Spherion staffing personnel work on
13  customer sites?
14      A    Sometimes.
15      Q    How frequently?
16      A    Depends on contractual terms.  Volume of
17  people assigned.
18      Q    I'm sorry.  Say again?
19      A    It depends on contractual terms and the number
20  of people that are assigned.  There's a lot of variables
21  that play into whether or not there's on-site presence.
22      Q    Some Spherion employees work on-site without
23  the presence of Spherion supervisors; correct?
24      A    Correct.
25      Q    What percentage?
```

```
 1              (The deposition officer read back the answer
 2    as follows:
 3              "ANSWER:  Yes.")
 4    BY MR. QUALLS
 5        Q     More than 2,000?
 6              MR. SANDERSON:  Objection.  Asked and
 7    answered.
 8              THE WITNESS:  I would say yes.
 9    BY MR. QUALLS
10        Q     More than 3,000?
11        A     Probably.
12        Q     More than 4,000?
13        A     I don't have the answer to that question.
14        Q     Now with respect to temporary personnel, is it
15    your testimony that client or client personnel schedule
16    their meal periods?
17        A     They provide work schedules to Spherion, and
18    if meals are not included in that work schedule, we
19    would ask the client to include them for our personnel.
20        Q     My question is more specific than that.
21        A     Uh-huh.
22        Q     Does client or client personnel schedule meal
23    periods for temporary personnel?
24        A     No.
25        Q     Who schedules the meal periods?
```

1  A   Spherion adopts the work schedules to the
2  client we work for. If in fact meal periods are not
3  outlined in that work schedule, we would request that
4  one be included for our people.
5  Q   And who is responsible for -- withdraw the
6  question.
7      Is it the case that temporary -- withdraw the
8  question.
9      Is it the case that client or client personnel
10 provide Spherion branch personnel with schedules for
11 flexible staff?
12 A   Clients contact us with the work schedules
13 they need covered. I think that's the answer to your
14 question.
15 Q   Is that before the temporary personnel is
16 placed at their site?
17 A   Yes.
18 Q   So, for example, a client would contact the
19 branch personnel and say I need a full-time
20 receptionist?
21 A   Uh-huh.
22 Q   Is that correct?
23 A   Correct. And they would typically say it's
24 Monday through Friday from 8:00 to 5:00 or whatever
25 hours they would need covered.

1   Q   Do they provide any other scheduling
2   information in that step of the process to Spherion?
3   A   I don't have firsthand knowledge of any of the
4   order received information.
5   Q   Does -- are branch personnel instructed that
6   they are to ensure that schedules provided by clients
7   for temporary personnel that have yet to begin working
8   at a client site specifically include a meal period
9   break?
10          MR. SANDERSON: Objection. Vague.
11          THE WITNESS: I don't have knowledge of that.
12  BY MR. QUALLS
13  Q   Have you ever instructed branch personnel to
14  do so?
15  A   I have not. Personally.
16  Q   To your knowledge, has anyone ever instructed
17  branch personnel to do so?
18  A   Not to my knowledge.
19  Q   Do clients provide written schedules to branch
20  personnel for flexible staff before flexible staff
21  arrive at a client site?
22  A   I don't know.
23  Q   Are clients required, to your knowledge, to
24  provide branch personnel with written schedules for
25  temporary personnel before temporary personnel work on a

```
 1   by any client of Spherion to schedule a meal period for
 2   a temporary personnel?
 3           MR. SANDERSON:  Objection.  Vague and
 4   ambiguous.
 5           THE WITNESS:  I don't have that knowledge.
 6   BY MR. QUALLS
 7       Q   Are clients obligated to schedule meal periods
 8   for temporary personnel?
 9       A   No.
10       Q   Does -- withdraw the question.
11           Are clients obligated to provide rest periods
12   for temporary personnel?
13           MR. SANDERSON:  Objection.  It's beyond the
14   scope.
15           You don't have to answer that.
16           MR. QUALLS:  Are you instructing her not to
17   answer?
18           MR. SANDERSON:  Yes.
19           MR. QUALLS:  All right.
20           MR. SANDERSON:  She's been produced on meal
21   periods, not rest periods.
22           MR. QUALLS:  All right.
23           MR. SANDERSON:  I'd like a break when you get
24   a chance, too.
25           MR. QUALLS:  Excuse me?
```

```
 1   occurred; correct?
 2       A    Correct.
 3       Q    You also mentioned site visits?
 4       A    Uh-huh.
 5       Q    How frequently are site visits made?
 6       A    It varies, again by client, what type of work
 7   is being done, how many people we have there, how long
 8   the assignments are for.
 9       Q    Is there a requirement that site visits take
10   place at certain minimum intervals?
11       A    Not to my knowledge.
12       Q    Are there any documents that inform --
13   withdraw the question.
14            Who performs site visits?
15       A    Branch personnel.
16       Q    Does the service intelligence training
17   documentation inform branch personnel of the work they
18   are to perform on-site visits?
19       A    I'm not sure.
20       Q    Are you aware of any documents that inform and
21   instruct branch personnel as to the work they are to
22   perform on-site visits?
23            THE WITNESS:  Repeat the question for me,
24   please.
25            (The deposition officer read back the question
```

1   Our people are assigned tasks, but they're not
2   necessarily tasks that can be designated at specific
3   times during the day.
4   BY MR. QUALLS
5       Q   Who assigns the tasks?
6       A   If there's no on-site presence -- which is
7   what we're talking about; right?
8       Q   Yes.
9       A   Then the client would direct our people to
10  perform the tasks that are needed at the time.
11      Q   And in that circumstance, it is the client who
12  decides when those tasks are to be done on a day-to-day
13  basis; correct?
14          MR. SANDERSON:  Objection.  Vague and
15  ambiguous and overbroad.
16          THE WITNESS:  Yes.
17  BY MR. QUALLS
18      Q   When you were -- withdraw the question.
19          Have you ever worked as an hourly employee for
20  Spherion?
21      A   No.
22      Q   When -- who schedules meal periods for virtual
23  employees?
24      A   I don't have that information.
25      Q   To your knowledge, does Spherion schedule meal

```
 1      Q    You can answer.
 2           MR. SANDERSON:  It's an incomplete
 3   hypothetical.
 4           THE WITNESS:  The branch personnel would go
 5   back to the client to ask why.  And whether or not an
 6   hour was due would be based on the legal determination.
 7   BY MR. QUALLS
 8      Q    To your knowledge, has a Spherion employee
 9   ever been paid an extra hour of compensation for a
10   missed meal period?
11      A    I don't have that information.
12      Q    You're not aware of any such payment; correct?
13      A    I'm not aware of it.
14           MR. QUALLS:  Off the record.
15           (A recess was taken.)
16           MR. QUALLS:  Let's mark next as Exhibit 6
17   documents bearing production numbers D0292 through
18   D0295.
19   BY MR. QUALLS
20      Q    Do you recognize this document, ma'am?
21      A    I do.
22      Q    What do you recognize it to be?
23      A    It's a section from our employment law desk
24   book.
25      Q    What is an employment law desk book?
```

# EXHIBIT C.

# spherion

## Weekly time record

**Account Name:** Cisco Systems
**Employee Name:** Valerie Watson-Smith

**Week ending:** 3/11/2007

*Time Card will calculate from Reg hours - Other, then give a total on each line

| Day | Date | Time In | Time Out | | | | | Total Hours Worked |
|---|---|---|---|---|---|---|---|---|
| Monday | 3/5/2007 | 10:00 AM | 6:00PM | | | | 8:00 | 8:00 |
| Tuesday | 3/6/2007 | 9:30 AM | 5:30PM | | | | 8:00 | 8:00 |
| Wednesday | 3/7/2007 | 9:30AM | 5:30PM | | | | 8:00 | 8:00 |
| Thursday | 3/8/2007 | 10:00AM | 6:00PM | | | | 8:00 | 8:00 |
| Friday | 3/9/2007 | 9:00 AM | 5:00PM | | | | 8:00 | 8:00 |
| Saturday | 3/10/2007 | n/a | n/a | | | | n/a | n/a |
| Sunday | 3/11/2007 | n/a | n/a | | | | n/a | n/a |
| TOTAL HOURS | | | | | | | | 40:00 |

D0086